DA 11-0376

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 84

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

RICHARD EDWARD MELTON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC-10-088
Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Joslyn Hunt, Chief Appellate Defender, Helena, Montana

           Robin A. Meguire, meguirelaw.com, Great Falls, Montana

       For Appellee:

           Steve Bullock, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General, Helena, Montana

           John Parker, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  March 14, 2012

Decided:  April 17, 2012

Filed:

_____
                  Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Pursuant to a plea agreement, Richard Edward Melton pleaded guilty in the Eighth Judicial District Court, Cascade County, of failing to comply with the Sexual or Violent Offender Registration Act.  As contemplated in the plea agreement, the District Court committed Melton to the Department of Corrections for two years, all suspended.

¶2    As Condition 14 of his suspended sentence, the District Court prohibited Melton from having contact with any individual under the age of 18, except for Melton's own children, "unless accompanied by an approved and appropriately trained, responsible adult who is aware of [Melton's] sexual conviction and approved by the probation and parole officer and sexual offender treatment provider."  Furthermore, as Condition 15, the District Court prohibited Melton from frequenting places where children congregate or are reasonably expected to be present—including, but not limited to, schools, parks, playgrounds, malls, movies, fairs, parades, swimming pools, carnivals, arcades, parties, family functions, and holiday festivities—unless accompanied by an approved and appropriately trained, responsible adult who is aware of Melton's sexual conviction and approved by the probation and parole officer and sexual offender treatment provider. Melton also must "obtain permission from his Probation Officer prior to going to any of the above places."

¶3    Melton objected to Condition 15 to the extent it prohibits him from accompanying his own children to places and functions where there will be other children, unless he is accompanied by a trained chaperone and given prior approval by his probation officer. Melton contends that this condition is not reasonably related to his rehabilitation or the

protection of the public. He asserts that the condition was "indiscriminately imposed" and "unnecessarily burdens [his] constitutionally protected relationship with his children and his right to freedom of travel." For the reasons which follow, we disagree with Melton's contentions and affirm the District Court's judgment.

## BACKGROUND

¶4 In 1999, Melton was charged in Washington with rape of a child in the third degree. He was 20 years old at the time, and the victim was the 15-year-old daughter of a friend with whom Melton was residing. The victim told the investigating officer that the sexual intercourse was consensual. Nevertheless, Melton admitted to the officer that he "knew better."

¶5 Melton was released from custody pending trial. When he failed to appear for one of his court hearings, he was charged with bail jumping. Ultimately, Melton was convicted of both offenses. On the bail jumping offense, the Washington court sentenced him to 8 months of confinement followed by 12 months of community custody. For the rape, the court sentenced him to 16 months of confinement followed by 36 months of community custody. The sentences were to run concurrently. Melton was required to register as a sexual offender. In addition, he was to enter and complete sexual deviancy treatment during the probationary period.

¶6 Melton began, but did not complete, the sexual deviancy treatment. His last date of attendance was in October 2002. He moved to Lincoln, Montana, in 2003 or 2004 where he worked for about two years before moving to the Great Falls area. He failed, however, to notify law enforcement in Montana or Washington of his various changes in

3

residence. In May 2004, the Washington court issued a fugitive warrant due to Melton's failure to verify his address (a felony). Around this same time, Melton married a woman, Lacey, whom he had known for several years. Lacey had a young son (born in 2000) from a previous relationship. Melton adopted Lacey's son. In addition, Melton and Lacey had two other children: a daughter born in 2004 and a son born in 2007.

¶7 A petition was filed in the Washington court to revoke Melton's probation on the rape conviction. When Melton failed to appear, a bench warrant was issued for his arrest. This warrant stated that Melton was extraditable from Oregon and Idaho. In March 2010, the Cascade County Sheriff's Office discovered that Melton was living in Belt (approximately 20 miles east of Great Falls) without having notified the Sheriff's Office of his residence as required by Montana's Sexual or Violent Offender Registration Act (SVORA). *See* Title 46, chapter 23, part 5, MCA. The Sheriff's Office also determined that Melton had an active warrant from Washington. A deputy notified Washington authorities of Melton's location, and the Washington court in turn issued an amended bench warrant which provided that Melton was also extraditable from Montana. The Cascade County Sheriff's Office received the amended warrant on August 10, 2010, at which time it was served on Melton. The sentencing transcript in the present case reflects that Melton was to be returned to Washington upon the conclusion of the proceedings relating to his instant offense in Montana.

¶8 In this regard, the State of Montana charged Melton on March 12, 2010, with one count of failure of a sexual offender to provide notice of change of residence, a felony, in violation of §§ 46-23-505 and -507, MCA (2009). Melton and the State reached a

4

nonbinding plea agreement in which the State agreed to recommend a two-year commitment to the Department of Corrections, with all time suspended. Melton entered his guilty plea on August 4, 2010, admitting that "I moved to Belt, and I didn't notify the sheriff's office when I moved."

¶9 Prior to sentencing, a probation and parole officer, Susan F. Carroll, prepared a presentence investigation report. In her evaluation and recommendation, Carroll noted that "by his failing to complete the probationary term of his [Washington] sentence and failing to register with the proper authorities, [Melton] is working toward a lengthy criminal history." Carroll stated that she had

> concerns whether the Defendant has the ability to successfully complete supervision in a community setting. As one of the most important conditions of his prior sentence was the completion of Sexual Deviancy Treatment, which he failed to accomplish last attending on October 29, 2002. In addition, Mr. Melton failed to return to the State of Washington to appear on a warrant which initially was not extraditable in Montana. Now Mr. Melton must face the penalty for not abiding by the laws in two (2) states. Of further consequence is the emotional and financial burden he has placed on his family. The outcome for the Defendant's wife is being a single mother of three (3) children.

¶10 Upon defense counsel's motion, Dr. Michael Scolatti completed a psychological and psychosexual evaluation of Melton. The evaluation revealed various attributes, some weighing in Melton's favor and others weighing against him. On the positive side, Melton did not demonstrate any sexual interest in prepubescent children and did not exhibit any major psychopathology. His history did not reflect "a chronic, compulsive pattern of sexual abuse involving many victims over many years," he had not exhibited "a pattern of predatory, stranger oriented behavior," and his offenses did not include

5

"solicitation of others to engage in the acts, such as other children or adults." Melton appeared to understand the inappropriateness of his sexual behavior and showed empathy for the victim and concern for her welfare.

¶11 At the same time, however, Melton was defensive during the evaluation and prone to minimize or disregard his problems, even common shortcomings to which most people will admit. The testing revealed that Melton is very concerned about how he is perceived by others and wants to be viewed as exemplary. He tends to use denial and repression as a coping mechanism and was reluctant to admit to dysfunction or problems across many areas. He has poor insight and does not like to analyze himself or others. In general, he attempts to avoid or deny "unacceptable" feelings, impulses, and problems. As a result, Dr. Scolatti noted:

> Given this apparent tendency to repress undesirable characteristics, the interpretive hypotheses in this report should be reviewed with caution. Although there is no evidence to suggest an effort to intentionally distort the profile, the results may under-represent the extent and degree of any significant findings in certain areas due to Mr. Melton's tendency to avoid negative or unpleasant aspects of himself.

¶12 Dr. Scollati found that Melton's level of motivation for treatment was substantially lower than is typical of individuals being seen in treatment settings. Melton's responses indicated that he is satisfied with himself as he is, is not experiencing marked distress, and sees little need for changes in his behavior. Thus, Dr. Scolatti noted that engaging Melton in the therapeutic endeavor "is likely to represent a formidable problem."

¶13 As to recidivism, the risk-assessment tools used by Dr. Scolatti placed Melton in the "moderate" category. Nevertheless, Dr. Scollati designated Melton a Level 1 (low)

6

risk to reoffend. *See* § 46-23-509(2), MCA. He also recommended, though, that Melton be required to complete "at least" a Phase I component of an outpatient sexual offender treatment program. Dr. Scolatti noted that Melton could safely and effectively be treated in a community-based setting without the security of incarceration.

¶14 Lastly, Dr. Scollati concluded that Melton could reside with his wife and children, but recommended that Melton be prohibited from having any unsupervised contact with any female children under the age of 18. In this regard, objective measures indicated that Melton's sexual interests include adult females and adolescent females (ages 14 to 17); and while an interest in adolescent females "should not be construed as deviant, or an indication the person 'prefers' adolescent females," it presented a concern here in light of Melton's prior offense and the personality traits discussed above. Moreover, Melton's self-reported ratings of various images (depicting children, teens, and adults) indicated that he had "minimized his subjective sexual interest in comparison to his objectively measured sexual interest, especially in regards to adolescent females."

¶15 At sentencing, held April 28, 2011, Melton raised an objection to Condition 15. While not objecting to the general prohibition on his frequenting places where children congregate (unless accompanied by a trained chaperone), he proposed that an exception be included under which he would be allowed to go to such places, without a chaperone, "if he's with his own children." The District Court judge, however, observed that "I don't want to place other children at risk." The judge stated that he was "not going to allow [Melton] to go to any place where children congregate unless chaperoned by somebody who is trained."

7

## STANDARD OF REVIEW

¶16 We review restrictions or conditions on a criminal sentence for both legality and abuse of discretion. *State v. Hafner*, 2010 MT 233, ¶ 13, 358 Mont. 137, 243 P.3d 435; *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, 179 P.3d 1164.

## DISCUSSION

¶17 A court does not have the power to impose a sentence unless authorized by a specific grant of statutory authority. *State v. Burch*, 2008 MT 118, ¶ 23, 342 Mont. 499, 182 P.3d 66. A sentencing judge is specifically authorized to impose on a suspended sentence various restrictions or conditions that the judge considers necessary to obtain the objectives of rehabilitation and the protection of the victim and society. Section 46-18-202(1), MCA (2009).[1] These include restrictions on the offender's freedom of association and freedom of movement, plus "any other limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1)(c), (d), (f), MCA.

¶18 A sentencing judge's discretion under § 46-18-202(1), MCA, is "broad," and our review is correspondingly "deferential." *State v. Zimmerman*, 2010 MT 44, ¶ 17, 355 Mont. 286, 228 P.3d 1109. As a general rule, we will affirm a restriction or condition imposed pursuant to this statutory authority so long as the restriction or condition has some correlation or connection—i.e., nexus—to the underlying offense or to the offender

---

[1] Melton was charged with, and pleaded guilty to, committing the underlying SVORA offense in February 2010. Thus, the 2009 MCA applies here. *State v. Tracy*, 2005 MT 128, ¶ 16, 327 Mont. 220, 113 P.3d 297 (the law in effect at the time an offense is committed controls as to the possible sentence).

himself or herself. *Ashby*, ¶¶ 13-15; *Zimmerman*, ¶ 17. At the same time, however, we have explained that a sentencing judge's discretion "is not without limit" and that deferential review does not mean "no review at all." *Zimmerman*, ¶ 17 (internal quotation marks omitted). If the restriction or condition at issue is "overly broad or unduly punitive," or if the required nexus is "absent or exceedingly tenuous," we will reverse. *Zimmerman*, ¶ 17; *see also e.g. State v. Muhammad*, 2002 MT 47, ¶ 28, 309 Mont. 1, 43 P.3d 318 (concluding that the banishment condition was unnecessarily broad and severe); *State v. Herd*, 2004 MT 85, ¶¶ 24-25, 320 Mont. 490, 87 P.3d 1017 (concluding that the 40-year driving prohibition was unreasonable in terms of its harshness and duration); *cf. United States v. Doe*, 79 F.3d 1309, 1319 (2d Cir. 1996) ("While a sentencing court has broad discretion in fixing conditions of probation, and we therefore review a sentence of probation under an abuse-of-discretion standard, we carefully scrutinize unusual and severe conditions, such as one requiring the defendant to give up a lawful livelihood." (internal quotation marks omitted)); *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006) ("Where a condition of supervised release would impose sweeping restrictions on important constitutional rights, we review the condition more closely." (internal quotation marks omitted)).

**Nexus**

¶19 As a preliminary matter, the State contends that Melton's 2010 SVORA offense is "derivative of" his 1999 rape offense. The State's "offense nexus" analysis, therefore, includes some discussion of the 1999 rape. In response, Melton points out that he pleaded guilty and was sentenced in this case for a registration offense, not a sexual

9

exploitation offense. *See United States v. Curry*, 627 F.3d 312, 315 (8th Cir. 2010) ("Curry was convicted in the instant case of a registration offense, not a sexual exploitation offense."), *vacated on other grounds*, *Curry v. United States*, ___ U.S. ___, 132 S. Ct. 1533 (2012). Melton further argues that it was improper to impose a restriction or condition on his sentence for the instant offense (failing to provide notice of change of residence) based on a separate offense which occurred 12 years earlier, which involved different conduct (sexual intercourse with a 15-year-old girl when Melton was 20 years old), and which Melton has not repeated. In this regard, he cites several federal cases for the proposition that sex-offender conditions cannot be justified by stale sexual offenses. In *United States v. T.M.*, 330 F.3d 1235 (9th Cir. 2003), the Ninth Circuit reasoned that "[s]upervised release conditions predicated upon twenty-year-old incidents, without more, do not promote the goals of public protection and deterrence. The fact that T.M. has lived the last twenty years without committing a sex offense suggests that he no longer needs to be deterred or shielded from the public." 330 F.3d at 1240 (citations omitted). Similarly, in *United States v. Scott*, 270 F.3d 632 (8th Cir. 2001), the Eighth Circuit reversed the "special conditions of sex offenders" imposed on Scott because, while Scott had been convicted of a sexual offense in 1986, there was no evidence that he had a propensity to commit any future sexual offenses or that he had repeated the behavior in any way since the 1986 conviction. 270 F.3d at 636. The court reasoned that "the special conditions seem unlikely to serve the goals of deterrence or public safety, since the behavior on which the special conditions are based, though highly reprehensible, has ceased." *Scott*, 270 F.3d at 636.

10

¶20 While the State suggests that a nexus to the "original offense" (rather than to the SVORA offense for which the defendant is being sentenced) is sufficient, we decline to adopt this as a categorical rule. This Court has indicated that a passing, isolated, or stale instance of behavior or conduct is insufficient to support a restrictive probation condition imposed in the name of offender rehabilitation. *Ashby*, ¶ 15; *see also e.g. State v. Stiles*, 2008 MT 390, ¶ 16, 347 Mont. 95, 197 P.3d 966; *State v. Jones*, 2008 MT 440, ¶¶ 22-23, 347 Mont. 512, 199 P.3d 216. An "exceedingly tenuous" nexus is likewise insufficient. *Zimmerman*, ¶ 17. In some instances, the "original offense" underlying the registration requirement may have relevance. *Cf. T.M.*, 330 F.3d at 1240-41 ("[M]ore recent relevant events may revive old offenses and justify the imposition of supervised release conditions related to sex offender status."). In other cases, however, the "original offense" may be too isolated or stale to serve as justification for imposing the challenged condition. Each case must turn on its specific facts.

¶21 Here, on the facts presented, we conclude that Melton's 1999 rape conviction is relevant to the analysis and supports the challenged condition. As a result of that conviction, the Washington court required Melton to undergo sexual deviancy treatment during the probationary period of his sentence. Melton failed, however, to complete the treatment and absconded from the jurisdiction. It does not appear that he has ever addressed his underlying issues which led him to engage in the unlawful sexual behavior in 1999. Furthermore, Dr. Scolatti's findings, which Melton does not refute, indicate that Melton is prone to minimize or disregard his problems, is reluctant to admit to dysfunction, uses denial and repression as a coping mechanism, does not like to analyze

11

himself or others, and has poor insight. Melton's motivation for treatment is substantially below average, and he sees little need for changes in his behavior. Although Dr. Scolatti recommended that Melton be designated a Level 1 (low) risk to reoffend, which the District Court adopted, Melton's tendency to repress undesirable characteristics and to avoid unpleasant aspects of himself caused Dr. Scolatti to express concern that the results of the psychological and psychosexual testing "may under-represent the extent and degree of any significant findings in certain areas." Melton's self-reported ratings of various images of children, teens, and adults indicated that he had "minimized his subjective sexual interest in comparison to his objectively measured sexual interest, especially in regards to adolescent females." Based on the evaluation, Dr. Scollati recommended that Melton be prohibited from having any unsupervised contact with any female children under the age of 18.

¶22 Irrespective of the parties' disagreement about whether an "offense nexus" exists here, we have no difficulty concluding that there is an "offender nexus" and that "the history or pattern of conduct to be restricted [by the challenged condition] is recent, and significant or chronic." *Ashby*, ¶ 15. At present, Melton remains untreated for the sexual misconduct underlying his 1999 offense. Moreover, his denial and repression, his low motivation for treatment, and his tendency to avoid facing the consequences of his actions (as evidenced by his bail-jumping offense, his failure to complete sexual deviancy treatment, and his years of noncompliance with the sexual offender registration requirements) led Dr. Scolatti to conclude that engaging Melton in the therapeutic endeavor "is likely to represent a formidable problem." Given these circumstances, the

District Court had ample justification for placing a limitation on Melton's contact with children (other than his own) during his probationary period.

**Breadth and Severity**

¶23 Melton does not challenge Condition 14, which prohibits him from having contact with any individual under the age of 18 (other than his own children) unless accompanied by a trained and responsible adult. Melton also does not challenge Condition 15's general prohibition on his frequenting places where children typically congregate (unless accompanied by a chaperone). What Melton challenges is the absence of an exception in Condition 15 allowing him to accompany his own children, without a chaperone, to places where other children are reasonably expected to be present, such as schools, parks, playgrounds, malls, movies, fairs, parades, swimming pools, carnivals, arcades, parties, family functions, and holiday festivities. Melton suggests that the absence of such an exception unnecessarily burdens his "constitutionally protected relationship with his children" and his "right to freedom of travel."[2] Citing *Muhammad*, Melton complains that Condition 15 significantly impacts his right to family relations and is more restrictive than is reasonably necessary to achieve its purpose.

---

[2] Melton concedes that he did not raise a free-standing constitutional challenge to Condition 15 in the District Court. (He raised the lack of a "nexus" as the basis for his objection to the condition.) Melton explains that he cites his constitutional rights as additional support, on appeal, for his preserved claim that Condition 15 is unreasonable. In this regard, Melton relies on the authority of *State v. Roundstone*, 2011 MT 227, ¶ 21 n. 6, 362 Mont. 74, 261 P.3d 1009, where this Court held that the State's appellate arguments fell "within the scope of its theory" before the district court. We noted that parties may " 'bolster their preserved issues with additional legal authority or . . . make further arguments within the scope of the legal theory articulated to the trial court.' " *Roundstone*, ¶ 21 n. 6 (quoting *State v. Montgomery*, 2010 MT 193, ¶ 12, 357 Mont. 348, 239 P.3d 929).

¶24 In *Muhammad*, the sentencing court banished the defendant from Cascade County as a condition of his probation and required him to reside in Lewis and Clark County. In concluding that this restriction was unduly severe and punitive to the point of being unrelated to rehabilitation, and broader than necessary to protect the victim, we observed that Muhammad was residing in Cascade County at the time of the sentencing hearing, that he had family in Cascade County, that he had no family in Lewis and Clark County, and that he had been precluded from petitioning the district court to temporarily lift the restriction. *Muhammad*, ¶ 28. Notably, we further observed that the district court had imposed several "less restrictive" means to rehabilitate Muhammad and to protect the victim and society, including that he "have no contact with females under the age of 18" and "not frequent places where children congregate." *Muhammad*, ¶ 28. Thus, while Melton argues that Condition 15 is "even broader" in effect than the condition challenged in *Muhammad*, this is incorrect. Unlike Muhammad, who was categorically prohibited from having contact with females under the age of 18 and from frequenting places where children congregate, Melton is still permitted to engage in these activities—so long as he is accompanied by a trained and responsible adult and obtains permission from his probation officer. This Court has affirmed similar restrictions where the specific facts of the case justified their imposition. *See e.g. State v. Rowe*, 2009 MT 225, ¶¶ 26-30, 351 Mont. 334, 217 P.3d 471 (affirming a condition that prohibited Rowe from having contact with any person under the age of 15, unless accompanied by an approved adult); *State v. Brinson*, 2009 MT 200, ¶ 18, 351 Mont. 136, 210 P.3d 164 (affirming a condition

that required any contact between Brinson and his underage daughter to be supervised until such time as a counselor made a different recommendation).

¶25 Here, we are not persuaded that Condition 15 is unreasonable, unduly punitive, or overbroad. The condition's purpose is to preclude Melton from having unsupervised contact with children other than his own—a restriction which Melton has not objected to and which is justified, in any event, for the reasons discussed above. In order to accomplish this purpose, it is necessary to prohibit Melton from frequenting places where children congregate, unless accompanied by a trained and responsible adult. The fact that Melton's children are with him does not vitiate the need for a chaperone. As the State points out, the likelihood of Melton's having unsupervised contact with children in places like parks and playgrounds would actually *increase* if he were accompanied only by his own children, who would be likely to interact with other children themselves. The sentencing judge stated that he did not want to place other children at risk. Given Melton's demonstrated failure over the preceding ten years to face the legal consequences of the 1999 rape and to complete treatment for that offense, as well as his ongoing resistance to therapy, the District Court was clearly justified in this concern.

¶26 We reached the same conclusion in *State v. Malloy*, 2004 MT 377, 325 Mont. 86, 103 P.3d 1064, which involved similar facts. There, Malloy (a registered sex offender) was convicted of failing to report his change of residence. He was given a partially suspended sentenced that included certain conditions prohibiting from coming into contact with persons under the age of 18. In affirming this restriction, we observed that Malloy had been convicted of two prior sexual offenses and had failed to complete two

15

different sexual offender programs. In fact, he had never completed sexual offender treatment, either while incarcerated or under supervision of probation and parole. We reasoned that "Malloy's history demonstrates his inability to conform his conduct to the demands of this State's sexual offender laws. As such, Malloy exhibits behavior which places society in danger because of his recidivism." *Malloy*, ¶ 14. We noted that the probation conditions had been included in Malloy's suspended sentence "so that he must avoid situations which could reasonably be expected to lead to further offenses, given his history as a sexual offender." *Malloy*, ¶ 14. This reasoning in *Malloy* is also persuasive here with respect to Melton's history of absconding and failing to complete treatment.

¶27 As a final matter, we note that Melton, unlike the defendant in *Muhammad*, has not been precluded from petitioning the District Court to lift or modify Condition 15's restriction. In this regard, the State posits that once Melton has answered for his crimes in Washington and has successfully completed sexual offender treatment, his treatment provider may conclude that Melton no longer requires supervision when around young girls, in which case Melton may petition the court to modify or remove the condition. Similarly, in considering an identical restriction in *State v. Johnson*, 2011 MT 286, 362 Mont. 473, 265 P.3d 638, this Court observed that "the conditions challenged here appear to be quite restrictive of Johnson's movements. There is good reason for the imposition of restrictions, but if these prove to be unduly burdensome in practice, Johnson and/or his probation officer may seek relief from the District Court." *Johnson*, ¶¶ 18, 20.

¶28 In conclusion, the requirement that Melton, as a condition of his two-year suspended sentence, be accompanied by a trained and responsible adult when going to

any places where children typically congregate, and obtain permission from his probation officer before doing so, is reasonably related to the objectives of rehabilitation and the protection of society, § 46-18-202(1), MCA, and is not overbroad or unduly punitive.

¶29 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS