FILED

June 12 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0414

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 124

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

ANTHONY JOE LEYVA,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                   In and For the County of Yellowstone, Cause No. DC 09-441
                   Honorable Russell C. Fagg, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Garrett R. Norcott, Assistant
          Appellate Defender; Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Micheal S. Wellenstein,
          Assistant Attorney; Helena, Montana

          Scott Twito, Yellowstone County Attorney; Rodney E. Souza, Deputy
          County Attorney; Billings, Montana


                             Submitted on Briefs:  April 17, 2012

                                   Decided:  June 12, 2012


Filed:

                           _____
                                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Anthony Leyva was convicted of burglary under § 45-6-204, MCA, by the Thirteenth Judicial District Court following his plea of guilty. The District Court sentenced him to twenty years in prison, fifteen years of which it suspended on numerous conditions. Leyva appeals the conditions of his suspended sentence. We affirm in part, reverse in part, and remand for correction of the sentence.

¶2     Leyva raises the following issues on appeal:

¶3     *1.  Whether Conditions 24, 25, 26, 33, and 35 of Leyva's sentence are lawful conditions of his sentence for burglary.*

¶4     *2.  Whether Conditions 17, 28, 29, 31, 32, 38, and 41 of Leyva's sentence had a sufficient nexus to Leyva or to his offense.*

¶5     *3.  Whether Condition 31 of Leyva's sentence is impermissibly vague.*

**PROCEDURAL AND FACTUAL BACKGROUND**

¶6     On August 20, 2009, the State charged Leyva with Sexual Intercourse Without Consent. The State alleged Leyva had sexual intercourse with M.N. while she was intoxicated and passed out on her living room couch. Leyva entered into a plea agreement with the State in which he agreed to plead guilty to an amended charge of Burglary and to undergo a psychosexual evaluation by a certified evaluator of his choosing. The State agreed to dismiss the charge of Sexual Intercourse Without Consent, withdraw its notice of intent to have Leyva designated as a persistent felony offender, and recommend a twenty-year prison sentence with fifteen years suspended.

2

¶7 The State filed an Amended Information charging Leyva with burglary by remaining unlawfully in the victim's home "with the purpose to commit a sexual assault therein[.]" Leyva appeared in District Court for his change of plea hearing and stated, "I was invited to a residence and I exceeded the scope of my invitation by remaining with the intent to commit unwanted sexual contact with the victim."

¶8 Upon defense counsel's motion, Marla North, a licensed clinical professional counselor and clinical member of the Montana Sex Offender Treatment Association (MSOTA), completed a psychosexual evaluation of Leyva. North found Leyva's testing "showed normal sexual interests in adult and adolescent females. He has no recorded or reported history of child molestation." However, North noted that Leyva's prior criminal record included three other sexually related charges. She also observed that Leyva has poor impulse control as a result of his drug and alcohol abuse and he exhibits prominent antisocial personality traits. North also noted Leyva struggles with accountability:

> He does not acknowledge ever having acted out rape assault behaviors. However, he was found to use different kinds of excuses to defend against the accusation that he committed a sex offense as noted by responses such as, 'Sexual things just seemed to happen between me and the person who accused me, and I did not plan it,' and 'The sex thing that happened between me and the person who accused me has been made out to be worse tha[n] it really was.' He was also found to attempt to explain why his sexual behavior was justified as noted by responses such as, 'My sexual offense happened because the person was sexually loose or easy'. And, 'My sexual offense happened because I knew the person already had sexual experience and that they wanted it.'

¶9 North described Leyva as a "[m]orally indiscriminate, situational offender. This type of offender is a user of people, has a 'why not' attitude, and looks for opportunity

and vulnerability. They often use lure, force or manipulation." North concluded with a number of recommendations. Those pertinent to this discussion include:

> Mr. Leyva would benefit from completing Phase I, II, and III of specialized sex offender treatment . . . . he has not had sex offender treatment to date and has a history of sexually inappropriate charges.

> As an additional precaution, he should have no unsupervised time or employment or activities with vulnerable persons (minors, elderly, intoxicated, or disabled). Supervisors should be pre-approved by his treatment team.

> Avoid pornography, magazines, videos, (including explicit R-rated and cable channels) 900 numbers.

> No Internet access as porn and vulnerable people are easily accessed through the Internet.

> If a cell phone is used, all bills and records will be made available to the treatment team/probation officer.

¶10 Probation and Parole Officer, Laura McKee, compiled Leyva's presentence investigation report (PSI). The PSI indicated Leyva had prior felony convictions for Attempted Sexual Assault, Burglary, and Failure to Register as a Sex Offender. Leyva also was convicted of several misdemeanor offenses including Assault, Criminal Mischief, Obstructing a Peace Officer, Prostitution, and Driving under the Influence of Alcohol or Drugs.

¶11 Officer McKee concluded that the plea agreement's recommendation of a twenty-year sentence, with fifteen years suspended, was an appropriate sentence for Leyva. She stated that Leyva could "request parole to a prerelease center to address his sexual offender treatment after completing Phase I of sex offender treatment in Montana State

4

Prison." Officer McKee recommended a number of conditions for Leyva's community supervision, nearly all of which the District Court adopted verbatim at sentencing. Leyva challenges the following conditions of the suspended portion of his sentence:

17. The Defendant shall successfully RE-complete Cognitive Principles & Restructuring (CP&R) or similar cognitive and behavioral modification program.

. . .

24. The Defendant shall enter and successfully complete sexual offender treatment with an MSOTA clinical member or associate member with supervision, or equivalent, who is approved by the State and the Probation & Parole Officer, at the Defendant's expense. The Defendant shall abide by all treatment rules and recommendations of the treatment provider.

25. The Defendant shall obtain a psychosexual evaluation by an MSOTA certified or Department-approved treatment provider, at the Defendant's expense, and follow all recommendations of said evaluation.

26. The Defendant shall undergo annual HIV testing for the next five (5) years and make the results of each test available to the Probation & Parole Officer and the victim(s). [Section 46-18-256, MCA.]

. . .

28. The Defendant shall not have contact with any individual under the age of 18 unless accompanied by an appropriately trained, responsible adult who is aware of the Defendant's sexual conviction and is approved by the Probation & Parole Officer and sexual offender treatment provider. The Defendant shall sign a "No Contact" contract and abide by all conditions of the contract.

29. The Defendant shall not frequent places where children congregate unless accompanied by an appropriately trained, responsible adult who is aware of the Defendant's sexual conviction and is approved by the Probation & Parole Officer and sexual offender treatment provider. This includes, but is not limited to, schools, parks, playgrounds, malls, movies, fairs, parades, swimming pools, carnivals, arcades, parties, family functions, holiday festivities, or any other place or function where children are present or reasonably expected to be present. The Defendant shall

5

obtain permission from the Officer prior to going to any of the above places.

.  .  .

31.  The Defendant shall not view television shows or motion pictures geared toward his sexual offending cycle, or as a stimulus to arouse deviant thoughts or fantasies (i.e., shows based on sexualization of underage girls or boys, etc.).

32.  The Defendant shall not have access to the internet without prior permission from the Probation & Parole Officer and sexual offender therapist, nor can the Defendant have on any computer he owns any software that is intended for data elimination, encryption or hiding data. If Internet access is allowed, the Defendant must allow the Department to install rating control software and conduct random searches of the hard drive for pornography or other inappropriate material.

33.  The Defendant shall be designated a Level 2 sexual offender based on the psychosexual evaluation and other pertinent documentation. [Section 46-23-509, MCA.]

35.  The Defendant shall be subject to reasonable employment or occupational prohibitions and restrictions designed to protect the class or classes of persons containing the likely victims of further offenses. [Section 46-18-255(1), MCA.]

38.  The Defendant shall not have a cell phone, or such other technology/device with photo, video, or Internet capabilities. If cell phone use is allowed, all bills and records shall be made available to the Probation & Parole Officer.

41.  The Defendant shall not date, live with, or otherwise be aligned with any person with children under the age of 18 without the express prior approval of the therapist and Probation & Parole Officer. If this approval is granted, they shall both be involved with the Defendant's treatment to the extent recommended by the treatment provider. ***The Court makes an exception and will allow Defendant to live with his wife and son.*** [Emphasis in original.]

¶12 Leyva provided a sentencing memorandum to the District Court, recommending a ten-year commitment to the Department of Corrections, with seven years suspended.

6

Leyva argued that several of the PSI's recommendations are mandated by statute only when a conviction is a sexual offense, and that burglary is not a sexual offense. Leyva also objected to conditions restricting his involvement with minors and his activities in places where children congregate, prohibiting his use of pornography and telephone sex lines, and limiting his Internet access and cell phone use, contending that North's psychosexual evaluation did not identify any deviant behaviors that would necessitate such restrictions.

¶13 At the April 8, 2011, sentencing hearing, the State recommended a twenty-year prison sentence, with fifteen years suspended, and argued that all of the conditions in the PSI were appropriate. In imposing the State's recommended sentence, the District Court specifically rejected Leyva's argument that his burglary conviction did not warrant a condition of sex offender treatment and sex offender-related conditions:

> And something that's important to me, and I'm not sure I'm quite seeing the nuance that your attorney is seeing—I checked [the plea agreement] again this morning—you pled to, September 30th of 2007 I was invited into a residence but exceeded the scope of the invitation by remaining, and I think these are important words—with the intent to commit unwanted sexual contact with M.N. therein. And I bring that up specifically, because I do believe while you have pled to burglary, the burglary component was an underlying, unwanted sexual contact, and that fact, coupled with the fact that you have this criminal history which has a couple of previous sexual crimes that you plead guilty to, makes it important that we do treat you as a sexual offender. I think that's important for you; I think it's important for the community; I think it's important for when you get out for potential future victims.

¶14 The District Court imposed all of the conditions recommended in the PSI with two exceptions. The court did not impose a condition related to annual polygraph testing, and

it made an exception for Leyva's own child for the condition prohibiting Leyva from dating or living with any person with children under the age of 18 without approval of his probation and parole officer. The court also designated Leyva a Level 2 sexual offender based upon his psychosexual evaluation. Leyva timely appealed.

## STANDARD OF REVIEW

¶15 We review criminal sentences longer than one year for legality only. *State v. Holt*, 2011 MT 42, ¶ 7, 359 Mont. 308, 249 P.3d 470. We review the reasonableness of conditions or restrictions imposed in a sentence for abuse of discretion, if the conditions are objected to at sentencing. *Holt*, ¶ 7; *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, 179 P.3d 1164.

## DISCUSSION

¶16  *1. Whether Conditions 24, 25, 26, 33, and 35 of Leyva's sentence are lawful conditions of his sentence for burglary.*

¶17 A court has considerable latitude to impose conditions on a suspended sentence, provided they are "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society." Section 46-18-201(4)(o), MCA (2009).

¶18 Leyva argues that Conditions 24 (sexual offender treatment), 25 (a psychosexual evaluation), 26 (HIV testing), 33 (sexual offender designation), and 35 (employment and occupational restrictions), should be stricken from his sentence because these conditions are permissible only when a defendant is "convicted of a sexual offense." Sections 46-18-207(2)(a)(i), 46-23-509(2), 46-18-256, -255(1), MCA. Leyva points out that "[i]t

8

is illegal for a district court to impose a criminal sentence in the absence of statutory authority." *State v. Zimmerman*, 2010 MT 44, ¶ 13, 355 Mont. 286, 228 P.3d 1109. He reasons that, because he was not convicted of a sexual offense as that term is defined under § 46-23-502(9), MCA, the conditions lack statutory authority. The State argues that these conditions, with the exception of Condition 33, are reasonable given the facts underlying Leyva's burglary, his extensive criminal history, and his inability to take responsibility for his actions.

¶19 Leyva misinterprets a statutory directive for a particular condition as a proscription against the court's discretionary authority to impose such a condition. The statutes cited by Leyva require that the above conditions be imposed when the defendant is convicted of a sexual offense, but they do not restrict those conditions to sex offenses alone. That the Legislature has mandated certain conditions of probation for persons convicted of prescribed sex offenses does not limit the otherwise broad discretion of a sentencing court under §§ 46-18-201 and -202, MCA.

¶20 As to Condition 25, Leyva further asserts that it is impermissible to require him to undergo a second psychosexual evaluation after he already had completed one prior to sentencing. In addition to the evaluation, however, Condition 25 provides that Leyva shall "follow all recommendations of said evaluation." This condition imposes ongoing requirements during the suspended portion of Leyva's sentence and is not invalid on the ground that Leyva has completed the initial evaluation.

9

¶21 In addressing Condition 33, the State concedes that, under controlling precedent, an offender level designation may only be made for persons convicted of a sexual offense as defined in § 46-23-502(9), MCA. *Holt*, ¶ 21; s*ee also In re T.M.L.*, 2012 MT 9, ¶ 18, 363 Mont. 304, 268 P.3d 1255 (holding sexual offender registration requirement applied only to the statutory list of sexual offenses, or when the defendant specifically agreed to the condition in a plea agreement). Unlike the other conditions Leyva argues are statutorily unwarranted, the designation of sexual offender status has implications beyond a condition of supervision on probation. The statutes make clear that registration, to which sexual offender designation is explicitly tied (§§ 46-23-508, -509, MCA), is only allowed for a non-sexual offense if included in a plea agreement. Section 46-23-512, MCA. As we stated in *Holt*, a district court cannot attach a sexual offender designation to a burglary conviction. *Holt*, ¶ 21. We therefore affirm the District Court's imposition of Conditions 24, 25, 26, and 35, and reverse the imposition of Condition 33.

¶22 *2. Whether Conditions 17, 28, 29, 31, 32, 38, and 41 of Leyva's sentence had a sufficient nexus to Leyva or to his offense.*

¶23 As stated above, a restriction or condition must be reasonably related to the objectives of rehabilitation or the protection of the victim and society. Section 46-18-201(4)(o), MCA. A condition meets this standard "so long as the condition has a nexus to either the offense for which the offender is being sentenced, or to the offender himself or herself." *Ashby*, ¶ 15. Offender-related conditions are appropriate where "the history or pattern of conduct to be restricted is recent, and significant or chronic. A passing, isolated, or stale instance of behavior or conduct will be insufficient to support a

10

restrictive probation condition imposed in the name of offender rehabilitation." *Ashby*, ¶ 15. We will reverse a condition when the required nexus is "absent or exceedingly tenuous." *State v. Melton*, 2012 MT 84, ¶ 18, 364 Mont. 482, ___ P.3d ___ (quoting *Zimmerman*, ¶ 17).

¶24 Leyva argues Conditions 28, 29, 31, and 41 fail the nexus test because Leyva did not attempt to harm a child during the burglary and there is nothing in his PSI revealing a history of harming children or abnormal sexual interests toward children. Each of these conditions restricts Leyva's interaction or opportunity for interaction with minors or with sexually-oriented media. Although Leyva does not have a history of harming children, North reported that Leyva is a "[m]orally indiscriminate, situational offender." She stated, "[t]his type of offender is a user of people, has a 'why not' attitude, and looks for opportunity and vulnerability." Recognizing the vulnerability of certain populations, North specifically recommended that Leyva have no unsupervised time with minor, elderly, intoxicated, or disabled individuals. North considered Leyva at a "High Moderate" risk to reoffend. Officer McKee additionally noted that Leyva has been convicted of two prior sexual offenses and, though neither was recent, he has never completed sex offender treatment.

¶25 In *State v. Malloy*, 2004 MT 377, ¶ 15, 325 Mont. 86, 103 P.3d 1064, we upheld similar conditions limiting the defendant's contact with minors without any indication that Malloy had a history of sex crimes involving persons under the age of 18. Similar to the present case, Malloy had prior sexual offenses, had not completed sex offender

treatment, and demonstrated an "inability to conform his conduct to the demands of this State's sexual offender laws." *Malloy*, ¶ 14. In addressing the sentencing conditions prohibiting Malloy from interacting with minors, we stated, "there can be no question they are reasonably related to the purpose of protecting society, including children, from Malloy's predilection toward sex offenses." *Malloy*, ¶ 15.

¶26 In *Melton*, we addressed similar conditions imposed after Melton pleaded guilty to violating the Sexual or Violent Offender Registration Act. Melton's offense stemmed from failing to report his change of residence after a rape conviction from twelve years earlier. *Melton*, ¶¶ 4-6. He argued the prior offense should not be considered for the imposition of conditions restricting his interaction with children. *Melton*, ¶ 19. We stated the prior offense was relevant, but not determinative of the appropriateness of the conditions: "Irrespective of the parties' disagreement about whether an 'offense nexus' exists here, we have no difficulty concluding that there is an 'offender nexus' and that 'the history or pattern of conduct to be restricted [by the challenged condition] is recent, and significant or chronic.'" *Melton*, ¶ 22 (quoting *Ashby*, ¶ 15).

¶27 Here, given Leyva's criminal history, his untreated status, the sexual nature of his burglary offense, and the recommendations of North and Officer McKee, we conclude that Conditions 28, 29, 31, and 41 bear a sufficient "offender nexus" to Leyva.

¶28 Leyva also objects to Conditions 28 and 29 on the ground that they are "impossible to comply with." Those conditions require Leyva to be accompanied by an adult "who is aware of the Defendant's sexual conviction," but Leyva was convicted of

12

burglary. The State argues that Leyva already has two previous sexual convictions: Attempted Sexual Assault and Prostitution, and, in any event, unwanted sexual contact formed the foundation for Leyva's Burglary charge and could be considered a sexual conviction. In its brief, the State suggests "the 'awareness' element can be satisfied if the accompanying adult is aware of Leyva's sexual offending history and the underlying facts of his current Burglary conviction." We agree with the State that inclusion of the term "sexual conviction" does not render the imposition of these conditions unlawful or an abuse of the District Court's discretion.

¶29 Leyva argues Condition 32 (limiting access to the Internet) and Condition 38 (restricting cell phone use and prohibiting devices with photo or video capabilities) fail to satisfy the nexus test because there is no evidence Leyva used the Internet or a cell phone while committing the burglary and his PSI does not reveal a history of using this technology to facilitate his crimes. The record, however, supports the District Court's determination that these conditions are reasonably related to the objectives of rehabilitation or the protection of the victim and society. Section 46-18-201(4)(o), MCA. North reported that accessing pornography is a common practice of persons with Leyva's sexual offender typology. She also stated Leyva is the type of sexual offender who looks for opportunity and vulnerability. North specifically recommended that Leyva have "[n]o Internet access as porn and vulnerable people are easily accessed through the Internet." North's report demonstrates an adequate offender nexus between these conditions and Leyva. Restricting Leyva's access to the Internet and placing safeguards on his Internet

13

and cell phone use are reasonable steps to ensure the protection of society and Leyva's rehabilitation.

¶30 North also recommended that Leyva avoid videos and 900 numbers. She stated, "[i]f a cell phone is used, all bills and records will be made available to the treatment team/probation officer." Leyva selected North to perform his psychosexual evaluation and her report reveals she focused on Leyva's criminal history, his current mental state, and his needs for successful treatment. We conclude that the District Court's adoption of North's recommendations, which reasonably connect the conditions to Leyva and his offense, was not an abuse of discretion.

¶31 Condition 17 requires Leyva to "successfully RE-complete Cognitive Principles & Restructuring (CP&R) or similar cognitive and behavioral modification program." Leyva contends that, because he already completed this course in 2009, this condition is "overly broad or unduly punitive." *Zimmerman*, ¶ 17. While Leyva may have completed the program earlier, North observed that he continued to refuse to take responsibility for his sexual behavior and attempted to justify his actions based on the characteristics of the victim. Combined with Leyva's extensive criminal record and his prior probation violations, the record supports the court's condition requiring Leyva to "re-complete" the CP&R course to help Leyva address his criminal thinking.

¶32 Finally, we note that the District Court is not precluded from modifying these conditions once Leyva completes sexual offender treatment if his treatment provider determines he no longer requires supervision around minors. *Melton*, ¶ 27; *State v.*

14

*Johnson*, 2011 MT 286, ¶ 20, 362 Mont. 473, 265 P.3d 638; *see also* § 46-23-1011(4)(a), MCA.

¶33    *3. Whether Condition 31 of Leyva's sentence is impermissibly vague.*

¶34    Condition 31 states that Leyva "shall not view television shows or motion pictures geared toward his sexual offending cycle, or as a stimulus to arouse deviant thoughts or fantasies (i.e., shows based on sexualization of underage girls or boys, etc.)."  Leyva argues that this condition is too vague to be enforced.  However, he never raised this argument in the District Court.  Officer McKee recommended in the PSI that the court impose this condition.  Thus, Leyva had an opportunity to challenge the recommendation on vagueness grounds prior to sentencing and at the sentencing hearing.  We decline to address Leyva's argument, since "we consider issues presented for the first time on appeal to be untimely and will not consider them."  *State v. LaFreniere*, 2008 MT 99, ¶ 11, 342 Mont. 309, 180 P.3d 1161.

## CONCLUSION

¶35    We affirm the District Court's imposition of Conditions 17, 24, 25, 26, 28, 29, 31, 32, 35, 38, and 41 for the suspended portions of Leyva's sentence, and reverse the imposition of Condition 33, designating Leyva as a Level II sexual offender.  We remand to the District Court for the sole purpose of striking Condition 33 from Leyva's sentence for burglary.

/S/ BETH BAKER

15

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS


Justice James C. Nelson, specially concurring.

¶36    This Court's review of sentencing conditions has, in my view, become an exercise in futility.   While the Court today attempts to weave an offender nexus between the challenged conditions of Leyva's suspended sentence and the psychosexual evaluation performed by North, the truth of the matter is that we would affirm the imposition of the challenged conditions even if the record did not contain a finding that the defendant is a "morally indiscriminate, situational offender."  Had Leyva broken into a stranger's home and raped her (rather than being there by invitation and taking advantage of an "opportunity"), I have no doubt that we would uphold the imposition of restrictions on his access to the Internet, on his use of devices with photo and video capabilities, on his contact with children, etc.  The fact that "Leyva is the type of sexual offender who looks for opportunity and vulnerability" is simply window dressing.

¶37    Three years ago, this Court stated that "[u]nless a condition is legally mandated, conditions of probation should not be imposed as standard or stock requirements.  Rather, sentencing must be individualized." *State v. Simpson*, 2009 MT 43, ¶ 5, 349 Mont. 275, 203 P.3d 791.  Yet, sentencing courts, by and large, and the Department of Corrections

16

(DOC), in particular, have ignored that admonition. Indeed, as we have seen in case after case, DOC has a laundry list of conditions that probation and parole officers recommend as a matter of course and that district courts, in turn, impose lock, stock, and barrel. Even a cursory comparison of the conditions at issue in this case (coming to us from the Thirteenth Judicial District), with those at issue in *State v. Melton*, 2012 MT 84, 364 Mont. 482, ___ P.3d___ (coming from the Eighth Judicial District), and *State v. Johnson*, 2011 MT 286, 362 Mont. 473, 265 P.3d 638 (coming from the Sixth Judicial District), reveals that such restrictions have evolved into stock conditions for all sexual offenders. And, as today's decision reflects, simply being a member of a group that has "a common practice" of engaging in certain conduct is now enough to justify a given condition. Opinion, ¶ 29. Perhaps all sexual offenders *should* be restricted in the ways proposed by DOC and adopted by district courts on a routine basis in their sentencing orders. But, if that is the case, then we should end this pointless charade of requiring some sort of nexus to the offense or the offender. All we have accomplished is to invite an endless stream of appeals challenging, for lack of a nexus, sentencing conditions that we generally find a way to uphold in any event, regardless of how tenuous the nexus may be.

¶38 I had thought that we resolved our method of reviewing sentencing conditions in *State v. Ashby*, 2008 MT 83, 342 Mont. 187, 179 P.3d 1164. But as demonstrated by our cases since *State v. Stiles*, 2008 MT 390, 347 Mont. 95, 197 P.3d 966, the law in this area is more muddled than it ever was. *See e.g. State v. Zimmerman*, 2010 MT 44, ¶¶ 26-32, 355 Mont. 286, 228 P.3d 1109 (Nelson, J., concurring); *State v. Hernandez*, 2009 MT

17

341, ¶¶ 23-27, 353 Mont. 111, 220 P.3d 25 (Cotter, Nelson, & Leaphart, JJ., dissenting).
My frustration in having to follow botched precedent is exceeded only by my frustration
in the fact that we wasted months trying to straighten out our jurisprudence.

¶39    I specially concur.


/S/ JAMES C. NELSON