FILED

05/09/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0255

DA 21-0255

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 80N

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

CARL SANGREY,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC 19-389
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate Defender, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney General, Helena, Montana

        Joshua A. Racki, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  March 15, 2023

Decided:  May 9, 2023

Filed:

                    Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Carl Sangrey Jr. (Sangrey) appeals the imposition of six contested sentencing conditions by the Eleventh Judicial District Court, Cascade County. We affirm.

¶3 Sangrey raises one issue on appeal: whether the District Court abused its discretion when it imposed contested sentencing Conditions 7, 11, 28, 29, 42, and 43.

¶4 In June 2019, the State charged Sangrey with two counts of felony Sexual Assault after 12-year-old Jane Doe I and 16-year-old Jane Doe II disclosed that Sangrey sexually abused them. Jane Doe I reported that the sexual abuse began when she was five years old and ended a few weeks before her forensic interview. Jane Doe I reported that in the most recent incident, Sangrey held her down, squeezed and rubbed her breasts, and rubbed her "front part" and "butt part." After the incident, Jane Doe I told Jane Doe II about the assault, and Jane Doe II disclosed that she had also been touched by Sangrey. In her forensic interview, Jane Doe II reported that while she was at the fair with Sangrey and her family, Sangrey purposefully touched her vagina.

¶5 The State and Sangrey entered into a plea agreement which provided the State would amend the two counts of felony Sexual Assault to two counts of felony Criminal

2

Endangerment. In February 2021, Sangrey agreed to enter an *Alford* plea. The plea agreement provided that Sangrey "agrees to have the Court impose and to abide by all the standard conditions of probation as contained in the Administrative Rules of Montana applicable at the time [Sangrey] is sentenced."

¶6　The court ordered Sangrey to undergo a psychosexual evaluation (PSE) which was performed by Christopher E. Quigley, LCSW (Quigley). Quigley reported that Sangrey's score was consistent with individuals who are "considered to be overly falsifying on the test." Quigley found that Sangrey was not forthright about his sexual history. In the evaluation, Sangrey told Quigley that if he had touched one of his nieces, it was because he lost his balance and his hand touched their stomach when he caught his fall. Quigley made recommendations for conditions of probation after the evaluation. Quigley's recommendations included that Sangrey should complete Phases I and II of the sex offender program with a licensed therapist certified by the Montana Sex Offender Treatment Association (MSOTA); Sangrey should relinquish and not possess pornography; Sangrey should have no unsupervised contact with children under the age of 16 and should not participate in activities that require him to supervise children; Sangrey should not use alcohol or drugs unless medically indicated; and Sangrey should submit to periodic polygraph examinations as part of his ongoing sex offender treatment. Finally, Quigley determined that if convicted of a felony sexual offense, Sangrey should be required to register as a Tier I sex offender.

¶7 The District Court relied on the PSE and the presentence investigation report (PSI) at sentencing. The District Court sentenced Sangrey to the Department of Corrections for ten years, with nine years suspended, and ran the sentences concurrently. The District Court also ordered Sangrey to complete Phases I and II of sexual offender treatment with an MSOTA licensed provider.

¶8 During the sentencing hearing, the District Court imposed six conditions over Sangrey's objection: Conditions 7, 11, 28, 29, 42, and 43. Those conditions provided:

> Condition 7: The Defendant must obtain permission from his/her supervising officer before engaging in a business, purchasing real property, purchasing an automobile, or incurring a debt.

> Condition 11: The Defendant is prohibited from gambling.

> Condition 28: The Defendant shall not have any contact with any individual under the age of 18 unless accompanied by an appropriately trained, responsible adult who is aware of the Defendant's sexual conviction and is approved by the Probation & Parole Officer and sexual offender treatment provider. The Defendant shall sign a "No Contact" contract and abide by all conditions of the contract.

> Condition 29: The Defendant shall not frequent places where children congregate unless accompanied by an appropriately trained, responsible adult who is aware of the Defendant's sexual conviction and is approved by the Probation & Parole Officer and sexual offender treatment provider. This includes, but is not limited to, schools, parks, playgrounds, malls, movies, fairs, parades, swimming pools, carnivals, arcades, parties, family functions, holiday festivities, or any other place or function where children are present or reasonably expected to be present. The Defendant shall obtain permission from the Officer prior to going to any of the above places.

> Condition 42: The Defendant shall submit to annual polygraph testing. (For Treatment Purposes)

> Condition 43: The Defendant shall not date, live with, or otherwise be aligned with any person with children under the age of 18 without the express

4

prior approval of the therapist and Probation and Parole Officer. If this approval is granted, they shall both be involved with the Defendant's treatment to the extent recommended by the treatment provider.

¶9 Sangrey objected to Condition 7 because there was no nexus between financial oversight and his crimes. The District Court overruled this objection because "the supervising officer needs discretion" and it was a standard condition of probation. Sangrey objected to Condition 11 because a prohibition against gambling was not related to his crimes and he enjoyed going to the horse races. The District Court overruled this objection as it is a standard condition. Sangrey objected to Conditions 28 and 29 because he was not convicted of sexual offenses and the PSE did not find that his sexual interests included minors. The District Court overruled these objections due to the information in the PSE and because of the "factual basis of this charge." Next, Sangrey objected to Condition 42, arguing polygraph testing is unreliable and violates his due process rights. The court overruled this objection because the polygraph testing was for sex offender treatment purposes and the court wanted to defer to Sangrey's treatment professionals. Finally, Sangrey objected to Condition 43, arguing there was no nexus to himself or the offense. As with Conditions 28 and 29, the court concluded the PSE and the underlying facts established a basis for imposing this condition.

¶10 On appeal, Sangrey argues that the District Court abused its discretion when it imposed Conditions 7, 11, 28, 29, 42, and 43. He further argues that the imposed conditions have no nexus to the underlying offenses and are overly broad. We review for an abuse of discretion a district court's sentencing conditions if the conditions are objected to at

5

sentencing. *State v. Ashby*, 2008 MT 83, ¶¶ 9, 22, 342 Mont. 187, 179 P.3d 1164. A district court abuses its discretion when it "acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *In re R.M.T.*, 2011 MT 164, ¶ 26, 361 Mont. 159, 256 P.3d 935.

¶11 The State maintains that the District Court did not abuse its discretion as Sangrey agreed to follow standard conditions of probation as part of his plea agreement with the State. Because Conditions 7 and 11 are standard conditions of probation, the nexus requirement is inapplicable. Regarding Conditions 28, 29, 42, and 43, the State maintains these conditions meet the nexus requirement as they reflect the recommendations contained in Sangrey's PSE.

¶12 When suspending a sentence, district courts have discretion to impose conditional restrictions on a defendant's liberty during the suspended portion. Section 46-18-201(4), MCA. An imposed condition has a nexus to the offense or offender if the condition is reasonable or "necessary for rehabilitation or for the protection of the victim or society." *Ashby*, ¶¶ 13-15. We will reverse an imposed condition if it "is 'overly broad or unduly punitive,' or if the required nexus is 'absent or exceedingly tenuous.'" *State v. Melton*, 2012 MT 84, ¶ 18, 364 Mont. 482, 276 P.3d 900.

¶13 Sangrey argues that requiring an annual polygraph test (Condition 42) violates his right to due process and lacks a nexus to the offense. We have held that although polygraph tests are inadmissible in Montana court proceedings, this does not apply to polygraph tests as a condition of probation. *State v. Heddings*, 2008 MT 402, ¶ 20, 347 Mont. 169,

6

198 P.3d 242. Here, the District Court relied on the PSI and Quigley's recommendation that Sangrey undergo polygraph testing to assist with his sex offender treatment and rehabilitation. The District Court properly exercised its discretion to impose Condition 42 as it was recommended by the psychosexual evaluator and therefore is reasonably related to Sangrey's treatment needs as well as the underlying facts constituting the charges.

¶14 Sangrey argues that the conditions restricting his ability to contact or be in the presence of children without supervision (Conditions 28, 29, and 43) do not have a nexus to him or his offenses. He argues that no nexus was established because the PSE did not indicate he had a sexual interest in minors and because he pleaded guilty to criminal endangerment, which is not a sexual offense. However, as discussed above, district courts have discretion to impose conditional restrictions on a defendant's liberty during the suspended portion of a sentence. Section 46-18-201(4), MCA. Here, Conditions 28, 29, and 43 are based on Quigley's recommendation contained in the PSE and therefore are reasonably related to Sangrey and the underlying facts constituting the offenses.

¶15 Sangrey's argument that the District Court erred in relying on the underlying facts of the initial charges is incorrect. A sentencing court can rely on any evidence relevant to a defendant's sentence, which may include the defendant's background history, mental and physical condition, and any other evidence the court considers to have probative value. *State v. Rennaker*, 2007 MT 10, ¶ 49, 335 Mont. 274, 150 P.3d 960. The District Court described Sangrey's offense as having the potential to "impact victims for generations and . . . cause a cycling of offenses." The information relied on by the District

7

Court when imposing these conditions was relevant and reasonably related to Sangrey and his conduct.

¶16 The Montana Department of Corrections is authorized by rule to adopt standard conditions of probation, although it "may not make any rule conflicting with . . . conditions of probation imposed by a court." Section 46-23-1002, MCA. Sangrey appeals the financial oversight condition (Condition 7) and the no gambling condition (Condition 11), arguing they have no nexus to his offense. Under § 46-18-201(4)(c), MCA, sentencing courts have authority to impose standard conditions whenever suspending a sentence. While Conditions 7 and 11 are standard conditions recognized by the Department of Corrections, Admin. R. M. 20.7.1101 (2023), and § 46-23-1002(3), we conclude that the dispositive question is whether Sangrey agreed to the imposition of standard conditions of probation in his plea agreement. Sangrey did. Accordingly, Conditions 7 and 11 were properly imposed by the District Court because Sangrey agreed to their imposition.

¶17 Review of the record shows that the District Court did not abuse its discretion by imposing Conditions 7, 11, 28, 29, 42, and 43. Although Conditions 28, 29, 42, and 43 are not standard conditions of probation, the District Court had discretion to impose these conditions after reasonably relying on the recommendation of Sangrey's PSE and considering the underlying facts. Sangrey agreed to imposition of Conditions 7 and 11 when he entered his plea. He, therefore, has failed to preserve any challenge on appeal to these conditions.

¶18　We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶19　Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR