

DA 09-0368

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 44

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

DONALD E. ZIMMERMAN,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Ninth Judicial District,
                      In and For the County of Teton, Cause No. DC 08-023
                      Honorable Laurie McKinnon, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

             Joslyn Hunt, Chief Appellate Defender; Jim Wheelis, Assistant Appellate
             Defender; Helena, Montana

       For Appellee:

             Hon. Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
             Assistant Attorney General; Helena, Montana

             Joe Coble, Teton County Attorney; Choteau, Montana


                                  Submitted on Briefs:  January 27, 2010

                                        Decided:  March 9, 2010


Filed:

_____
                       Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Donald Zimmerman appeals the sentence imposed by the Ninth Judicial District Court, Teton County, following his conviction for maintaining a public nuisance.

¶2 The sole issue on appeal is whether the District Court erred when it required Zimmerman to remove his indoor pets from Teton County as a condition of a deferred imposition of sentence for maintaining a public nuisance.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Zimmerman is a seventy-six-year-old Korean War veteran who lives in Great Falls, Montana, and looks after a dilapidated house in Dutton, Montana. At the time of the events involved in this case, Zimmerman kept five cats and a fifteen-year-old poodle in the house in Dutton. He would drive to Dutton to feed his house pets each day. He fed the pets indoors. He would also leave food outside that was eaten by feral cats.

¶4 In May 2008 the State of Montana filed a complaint in the Justice Court of Teton County against Zimmerman for maintaining a public nuisance, a misdemeanor. Zimmerman had, the complaint alleged, purposely or knowingly maintained a condition that was offensive to the senses and obstructed the free use of property by interfering with the comfortable enjoyment of life or property of a considerable number of people. He did so, according to the complaint, by feeding a clowder of feral cats at the house in, and at various locations around, the town of Dutton. The cats affected residents in the town, befouling the air with their urine, littering the ground with their excrement, caterwauling, and damaging flowerbeds and shrubbery. The complaint further alleged

2

that unwanted kittens were found around town, as were dead cats. Zimmerman pled not guilty. After being convicted in a bench trial in Justice Court, Zimmerman appealed to the District Court.

¶5 Before the six-person jury in District Court, the State presented testimony from seven witnesses and admitted various exhibits. Zimmerman testified in his own defense. The testimony revealed that Zimmerman fed his indoor pets and the clowder of feral cats in Dutton. Each day Zimmerman would drive from his residence in Great Falls to Dutton. Upon arrival, he would scatter cat food on the doorstep of the house, feed his indoor pets, and then place food outside in cut-off milk jugs at various locations around town. The food attracted and was eaten by the feral cats. Various neighbors and a sheriff's deputy testified to counting between thirty and forty feral cats outside the house and speculated that there were even more than that. Two neighbors testified to trapping thirty to forty cats and "disposing of them" at farms outside town. Another neighbor trapped nine, had them spayed and inoculated, and placed them in homes. Despite these efforts, the cat population quickly rebounded.

¶6 Witnesses explained the felines' offensive impact on the town. The witnesses objected principally to the cats' urine and feces that polluted the neighborhood. They also attested to cats destroying flowerbeds, lawns, and shrubbery, cats fighting at night, and dead cats being found around town. Some neighbors expressed concern that the cats were inbreeding and carrying diseases. People complained regularly to town and county

3

officials about the cats. On different occasions the various town and county officials confronted Zimmerman about the complaints, but to no avail.

¶7 Zimmerman testified in his own defense. He admitted that he left food outside for the feral cats to eat. He did this because he loves animals, which are "God's creation," and he did not want them to starve. He denied ever bringing any of the feral cats to Dutton. On cross-examination, Zimmerman conceded that the mayor of Dutton and the deputy sheriff had told him that the feral cats were a problem and had asked him to stop feeding them but that he disregarded their admonishments. Zimmerman denied that the town clerk, the county sanitarian, or any of his neighbors had ever told him to stop feeding the feral cats. He did testify that one neighbor had cursed at him.

¶8 After less than an hour of deliberation, the jury returned a guilty verdict. The District Court scheduled a sentencing hearing for two weeks from that date and forbade Zimmerman from feeding the feral cats in the meantime. The District Court did, however, permit Zimmerman to continue to keep and feed his indoor pets.

¶9 At the sentencing hearing following the trial, the State asked the Court to fine Zimmerman $500 and recommended a two-year deferred imposition of sentence subject to various conditions, including the contested requirement that Zimmerman remove his house pets—three kittens, two cats, and a fifteen-year-old poodle—from Teton County. The State argued that a nexus existed between this condition and Zimmerman's conviction for two reasons: (1) that one neighbor had testified about dogs barking and cats being present in the house and (2) that the State was prepared to present evidence

4

that even after the verdict, when Zimmerman fed his inside pets, he also "accidentally" fed the outdoor feral cats. The State further asserted that it was prepared to offer testimony that subsequent to the verdict, Zimmerman had begun feeding his indoor pets outside. Despite its assurances, the State never actually presented such evidence. Zimmerman, through counsel, objected to removing his house pets, arguing that he was convicted for feeding the outdoor feral cats not his indoor pets. He denied that any of the neighbors had testified about dogs barking.

¶10 The District Court concluded that a nexus existed between Zimmerman's conviction and the deferred sentence condition requiring him to remove his indoor pets from Teton County. The District Court referenced testimony that Zimmerman would, upon arriving in Dutton, first feed his indoor pets and then place food outside for the feral cats. The District Court also referred to testimony from one neighbor that Zimmerman kept dogs and cats in the house. This, the District Court concluded, was sufficient to establish a connection under § 46-18-201(4)(o), MCA, between his conviction for maintaining a public nuisance and the sentencing condition requiring him to remove his pets from Teton County. The District Court pronounced Zimmerman's sentence: a $500 fine with all save $200 suspended, and a two-year deferred imposition of sentence. The District Court also imposed conditions prohibiting Zimmerman from feeding animals or possessing animal food in Teton County. The Court further required Zimmerman to remove his pets from Teton County and allowed law enforcement to inspect his property upon reasonable suspicion to ensure compliance with the other conditions. When asked

5

whether the sentence was clear, Zimmerman responded that he thought the sentencing conditions were harsh and stated earnestly that he had not been feeding the outdoor cats since the date of the trial.

¶11 Zimmerman moved to stay execution of the sentence pending appeal, arguing that requiring him to remove his pets from the house in Dutton would cause him irreparable harm. The State opposed this motion, arguing that it was the people of Dutton who had suffered the greater harm and that when Zimmerman feeds his indoor pets, he also "accidentally" feeds the outdoor cats. The District Court denied the motion to stay, basing its ruling on the State's arguments and the evidence presented at trial.

¶12 Zimmerman timely appealed.

## STANDARD OF REVIEW

¶13 It is illegal for a district court to impose a criminal sentence in the absence of statutory authority. *State v. Clark*, 2008 MT 391, ¶ 40, 347 Mont. 113, 197 P.3d 977. Here, the District Court apparently imposed the challenged condition pursuant to § 46-18-201(4)(o), MCA, and § 46-18-202(1)(f), MCA. With these provisions, the legislature has granted district courts legal authority to exercise discretion in imposing conditions on deferred sentences. *See* § 46-18-201(4)(o), MCA (authorizing "any other *reasonable* restrictions or conditions *considered* necessary for rehabilitation or for the protection of the victim or society" (emphasis added)); *State v. Ashby*, 2008 MT 83, ¶¶ 8-9, 342 Mont. 187, 179 P.3d 1164 (acknowledging "elements of judicial discretion" in these sentencing

6

provisions). We review the imposition of such conditions for abuse of discretion. *Id.* at ¶ 9.

## DISCUSSION

¶14 *Whether the District Court erred when it required Zimmerman to remove his indoor pets from Teton County as a condition of a deferred imposition of sentence for maintaining a public nuisance.*

¶15 Zimmerman submits that the sentencing condition requiring him to remove his house pets from Teton County was illegal because the condition had no nexus to him or his conviction for maintaining a public nuisance. Instead, Zimmerman contends, this condition served only to punish him for the harm his feeding of the feral cats caused the people of Dutton. We hold that the District Court did not abuse its discretion in requiring removal of Zimmerman's pets from Teton County.

¶16 A district court that defers imposition of a sentence possesses the authority to impose "any . . . reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society." Section 46-18-201(4)(o), MCA. Further, when imposing a sentence, a district court also possesses the sweeping authority to impose "any . . . limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1)(f), MCA. Neither provision mentions the objectives of retribution or punishment. *See State v. Muhammad*, 2002 MT 47, ¶ 28, 309 Mont. 1, 43 P.3d 318 (sentencing condition was too punitive to serve ends of rehabilitation).

7

¶17    The broad discretion granted to district courts to impose sentencing conditions is not without limit. *State v. Herd*, 2004 MT 85, ¶ 18, 320 Mont. 490, 83 P.3d 1017. Accordingly, our review of such conditions, while deferential, is not without teeth (or, as the case may be, claws). *See United States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008) (recognizing that review for abuse of discretion "does not mean there is no review at all"). Conditions imposed by a district court must relate to rehabilitation or protection of society within the particular context of an offender's crime or the unique background, characteristics, or conduct of the offender. *Ashby*, ¶ 15; *State v. Greensweight*, 2008 MT 185, ¶ 17, 343 Mont. 474, 187 P.3d 613; *State v. Ommundson*, 1999 MT 16, ¶ 11, 293 Mont. 133, 974 P.2d 620, *modified*, *Ashby*, ¶ 7, *overruled in part on other grounds*, *State v. Herman*, 2008 MT 187, ¶ 12 n. 1, 343 Mont. 494, 188 P.3d 978. We have used the terms "offense nexus" and "offender nexus" as shorthand references to describe this requirement. *E.g. Ashby*, ¶ 19; *State v. Krueger*, 2008 MT 265, ¶ 11, 345 Mont. 147, 190 P.3d 318; *State v. Stiles*, 2008 MT 390, ¶ 14, 347 Mont. 95, 197 P.3d 966. The required nexus may be indirect, *State v. Hunter*, 2008 MT 395, ¶ 9, 347 Mont. 155, 197 P.3d 998, but if it is absent or exceedingly tenuous, we will reverse the district court. *See e.g. State v. Jones*, 2008 MT 440, ¶¶ 22-23, 29, 347 Mont. 512, 199 P.3d 216. We will also reverse a district court that imposes sentencing conditions that are overly broad or unduly punitive. *Muhammad*, ¶ 28.

¶18    Here, given the considerable sentencing latitude granted by § 46-18-201(4)(o), MCA, and § 46-18-202(1)(f), MCA, we cannot conclude that the District Court abused its

8

discretion in requiring Zimmerman to remove his indoor pets from Teton County. Even though the indoor pets were not the basis of the charge of maintaining a public nuisance, they were an integral part of Zimmerman's established feeding routine. At trial, Sheriff's Deputy Clint Ellsworth testified:

> His [Zimmerman's] routine, he comes to town and takes out his cat food, and he'll dump a little generally on the doorstep, and he'll go inside and feed the animals inside, and then he'll come back and kind of go to his little stations he has, and then he comes back to his house.

Trial testimony also indicates that this routine persisted for three years. Indeed, it was to feed the indoor pets that Zimmerman initially brought cat food to Dutton. By requiring Zimmerman to remove his indoor pets from Teton County, the District Court minimized the likelihood that Zimmerman would bring cat food to Dutton. This in turn reduced the likelihood that Zimmerman would return to feeding the feral cats. It is, therefore, plausible to conclude that the removal of the indoor pets was reasonable and reasonably related to protecting the citizens of Dutton from further nuisances. Because we conclude that an offense nexus exists, we affirm the District Court's imposition of the challenged sentencing condition without addressing whether an offender nexus exists with respect to Zimmerman's indoor pets.

¶19 Zimmerman resists this conclusion with a catenation of arguments. First, Zimmerman asserts that he has protected property rights in his pets. Zimmerman is correct that pets are personal property, § 70-1-104(2), MCA, and that pet owners enjoy various rights with respect to their pets. *E.g. Phillips v. San Luis Obispo Co. Dept. of Animal Reg.*, 183 Cal. App. 3d 372, 376-77 (2d Dist. 1986) (pet owner entitled to

9

procedural due process prior to destruction of dog). Here, however, the District Court did not deprive Zimmerman of his pets, but merely required them to be removed from Teton County, where Zimmerman neither resides nor owns property. As such, we are unpersuaded by Zimmerman's first argument.

¶20 Zimmerman next submits that "[t]here is no reason to believe his continued care for his indoor animals would cause any harm to those animals." This argument misses the mark. The District Court did not require Zimmerman to remove his indoor pets because of concerns that Zimmerman would harm them. On the contrary, the District Court was concerned that if Zimmerman continued to care for his indoor pets in Dutton, he would also continue to care for the feral cats menacing the town.

¶21 Finally, Zimmerman contends that requiring him to remove his indoor pets was unduly harsh, serving only to "punish the animals and Zimmerman." Zimmerman asserts that because he is unable to keep the pets in Great Falls where he resides, the required removal of the animals from Teton County forced him to give up his long-time pets. This argument lacks support in the record. Zimmerman presented no testimony that he was unable to keep pets in Great Falls. At the sentencing hearing Zimmerman did say, "I don't know where I would put the cats an[d] old dog that are in the house." This, however, was not sworn testimony. Without more, we are unable to conclude that the District Court's imposition of the sentencing condition requiring Zimmerman to remove his pets from Teton County was so punitive that it amounted to an abuse of discretion.

10

¶22    For the foregoing reasons, we affirm the District Court's imposition of the challenged sentencing condition.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE

Chief Justice Mike McGrath, specially concurring.

¶23    For the purposes of this opinion, I concur with the result.

¶24    The sentence imposed here was authorized by Montana law. *See* §§ 46-18-201 and 202, MCA. I would review sentences generally for legality only. *See State v. Hernandez*, 2009 MT 341, ¶¶ 10-16, 353 Mont. 111, 220 P.3d 25 (McGrath, C.J., concurring). However, where as here, a sentence of less than one year of incarceration is ineligible for Sentence Review under § 46-18-903(1), MCA, I would review for abuse of discretion.

¶25    Section 46-18-201(4)(o), MCA, authorizes a sentencing judge, when deferring imposition or suspending execution of a sentence, to impose "any reasonable restrictions or conditions during the period of the deferred imposition or suspension of sentence," which may include "any other reasonable restrictions or conditions considered necessary

11

for rehabilitation or for the protection of the victim or society." The sentence imposed here requiring Zimmerman to remove his pets from Teton County is clearly authorized to protect the community from the public nuisance that resulted from Zimmerman's inability to care for his pets. The District Court did not abuse its discretion in imposing this legally-authorized sentence. Further nexus analysis by this Court undercuts a district court's discretion, is not required by the Montana Constitution, and could undermine Montana's broad sentencing goals.

/S/ MIKE McGRATH

Justice James C. Nelson, concurring.

¶26    I concur in our decision to affirm the District Court's imposition of the challenged sentencing condition in this case, under both the Court's reasoning and the additional approach set out below. The condition passes muster under our multi-factor standard of review for sentences, which I first review here.

¶27    **1. Objections.** As a general rule, this Court reviews any sentence imposed in a criminal case, whether objected to or not, if the defendant raises a plausible allegation that the sentence is illegal or exceeds statutory mandates. *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979); *State v. Kotwicki*, 2007 MT 17, ¶ 18, 335 Mont. 344, 151 P.3d 892. But this rule does not apply where the challenge is to a condition of sentence, in which case this Court will not review the unobjected-to condition at all, *State*

12

*v. Stiles*, 2008 MT 390, ¶ 14, 347 Mont. 95, 197 P.3d 966, and where the defendant acquiesced in, participated in, bargained for, desired, wanted, requested, or was willing to serve the illegal term of sentence, in which case this Court will allow the illegality to stand, *State v. Micklon*, 2003 MT 45, ¶ 10, 314 Mont. 291, 65 P.3d 559; *State v. Walker*, 2007 MT 205, ¶¶ 16-18, 338 Mont. 529, 167 P.3d 879.

¶28    **2.  Sentences that include at least one year of actual incarceration.**  Formerly, this Court reviewed a sentence that included one year or more of actual incarceration for legality only, and a challenge to the equitability of the sentence fell under the authority of the Sentence Review Division (SRD).  *State v. Herd*, 2004 MT 85, ¶ 22, 320 Mont. 490, 87 P.3d 1017; *State v. Montoya*, 1999 MT 180, ¶¶ 14-15, 295 Mont. 288, 983 P.2d 937.[1]

---

[1] *See also e.g. State v. Baker*, 2008 MT 396, ¶ 15, 347 Mont. 159, 197 P.3d 1001 ("Baker's contentions that the terms of incarceration violate statutory sentencing policies are equity issues, review of which lies with the Sentence Review Division, not this Court."); *State v. Duncan*, 2008 MT 148, ¶ 50, 343 Mont. 220, 183 P.3d 111 ("Where, as here, an offender is sentenced to more than one year in prison, we review that sentence for legality only.  In such cases, any challenges to the equity of the sentence must be brought before the Sentence Review Division." (citation omitted)); *State v. Shults*, 2006 MT 100, ¶ 32, 332 Mont. 130, 136 P.3d 507 ("[S]ince Shults's sentence is within statutory parameters, his equity argument is not properly before this Court.  Although we will not review the equity of Shults's sentence, he is not precluded from petitioning for sentence review." (citation omitted)); *State v. Wardell*, 2005 MT 252, ¶ 29, 329 Mont. 9, 122 P.3d 443 ("Although we will not review the equity of Wardell's sentence he may petition for sentence review."); *State v. Legg*, 2004 MT 26, ¶ 53, 319 Mont. 362, 84 P.3d 648 ("The State responds, and we agree, that this is an issue concerning the equity of Legg's sentence, which properly lies with the Sentence Review Division."); *Vernon Kills On Top v. State*, 2000 MT 340, ¶ 74, 303 Mont. 164, 15 P.3d 422 ("To the extent Petitioner's complaints relate to the equity of his sentence, those complaints are properly addressed to the Sentence Review Division of this Court."); *State v. Montoya*, 1999 MT 180, ¶ 14, 295 Mont. 288, 983 P.2d 937 ("[A] challenge to the 'equitability' of a sentence falls under the authority of the Sentence Review Division . . . ."); *State v. Gordon*, 1999 MT 169, ¶ 54, 295 Mont. 183, 983 P.2d 377 ("To the extent Gordon's complaints relate

However, because "equity" is no longer SRD's standard of review, *see Driver v. Sentence Review Division*, 2010 MT 43, ¶ 21, ___ Mont. ___, ___ P.3d ___ (holding that SRD reviews sentences for clear inadequacy or excessiveness and not for simple equity), this Court must now review such sentences for both legality and equitability, *see Driver*, ¶¶ 34-35 (Nelson, J., dissenting). As a matter of fact, even under the former scheme, if a sentence included at least one year of actual incarceration, this Court would review the sentence for abuse of discretion if it wanted to. *See e.g. State v. Hernandez*, 2009 MT 341, ¶¶ 1, 7-8, 353 Mont. 111, 220 P.3d 25 (reviewing Hernandez's sentence for abuse of discretion even though his sentence included at least one year of actual incarceration). This latter abuse of discretion standard implicates sentencing conditions, which have their own subset of rules.

¶29    **3. Sentencing Conditions.** As noted, unobjected-to conditions are not reviewed at all. *Stiles*, ¶ 14. Objected-to conditions that are expressly authorized by statute are reviewed under the arbitrariness standard (i.e., whether the sentencing court acted

_____

to the equity of his sentence, those complaints are properly addressed to the Sentence Review Division of this Court."); *State v. Baisch*, 1998 MT 12, ¶ 15, 287 Mont. 191, 953 P.2d 1070 ("We will not review sentences for mere inequity or disparity; that task is left to the Sentence Review Division."); *State v. Romannose*, 281 Mont. 84, 94, 931 P.2d 1304, 1311 (1997) ("To the extent that Martin's complaints concern the equity of his sentence, those must be addressed to the Sentence Review Division."); *State v. Moorman*, 279 Mont. 330, 337, 928 P.2d 145, 149 (1996) ("[T]he Sentence Review Division reviews the equity of a sentence."); *State v. Ford*, 278 Mont. 353, 363, 926 P.2d 245, 251 (1996) ("We will not review a sentence for mere inequity; the proper forum for a review of that nature is the Sentence Review Division."); *State v. DeSalvo*, 273 Mont. 343, 350, 903 P.2d 202, 207 (1995) ("[T]he proper channel for a challenge to the equity of a sentence as opposed to its legality is through the Sentence Review Division. We have consistently held that we will not review a sentence on appeal for mere inequity or disparity." (internal quotation marks and citation omitted)).

arbitrarily without conscientious judgment or exceeded the bounds of reason). *State v. Essig*, 2009 MT 340, ¶ 14, 353 Mont. 99, 218 P.3d 838. And objected-to conditions that are "rules" adopted by the Department of Corrections for the conduct of probationers are also reviewed under the arbitrariness standard. *Hernandez*, ¶ 7. But objected-to conditions imposed under § 46-18-201(4)(o) or § 46-18-202(1)(f), MCA (authorizing "any other" reasonable restrictions) are reviewed under the nexus test. *Stiles*, ¶¶ 13-14; *State v. Ashby*, 2008 MT 83, ¶¶ 13-15, 342 Mont. 187, 179 P.3d 1164. There remains another set of rules, however: those for sentences involving less than one year of actual incarceration.

¶30 **4. Sentences that do not include at least one year of actual incarceration.** For sentences that are statutorily ineligible for review by SRD because they involve less than one year of actual incarceration, *see* § 46-18-903(1), MCA, this Court formerly reviewed such sentences for both legality and equity. *Herd*, ¶ 22. Now, however, a third standard has been injected into the mix: clear inadequacy or excessiveness. *Driver*, ¶ 21. Thus, henceforth, this Court must review sentences that are statutorily ineligible for review by SRD for (1) legality, (2) equitability, and (3) clear inadequacy or excessiveness, *Montoya*, ¶¶ 14-15; *Herd*, ¶¶ 16-23; *Driver*, ¶ 21—unless, of course, the challenge is to an unobjected-to sentencing condition, *Stiles*, ¶ 14, or to a sentencing term that the defendant acquiesced in, participated in, bargained for, desired, wanted, requested, or was willing to serve, *Micklon*, ¶ 10; *Walker*, ¶¶ 16-18, in which case we conduct no review at all.

¶31    **Analysis.** In the present case, Zimmerman objected to the sentencing condition at issue; thus, his sentence does not implicate our rules regarding unobjected-to terms and conditions of sentence. Furthermore, the condition is not expressly authorized by statute or a "rule" adopted by the Department of Corrections for the conduct of probationers; thus, it does not implicate our rules regarding such conditions. The condition is legal and equitable; it has a nexus to the offense; and it is not clearly inadequate or excessive. For that matter, it is not arbitrary either. In short, the condition satisfies every standard we've got. Therefore, Zimmerman's sentence must be correct.

¶32    I concur.


/S/ JAMES C. NELSON