
DA 12-0218

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2013 MT 105

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ASHLI LEE MACDONALD,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 11-145
Honorable Edward P. McLean, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Eileen A. Larkin, Assistant
Appellate Defender; Helena, Montana

    For Appellee:

          Timothy C. Fox, Montana Attorney General; Tammy K Plubell, Assistant
Attorney General; Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney; Susan Boylan, Deputy
County Attorney; Missoula, Montana


                      Submitted on Briefs:  February 13, 2013
                               Decided:  April 23, 2013


Filed:

_____
                               Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Ashli MacDonald appeals the judgment and sentence of the Fourth Judicial District Court, following her convictions for two felonies—assault of a minor and aggravated assault—arising from incidents involving her infant son, John Doe. MacDonald raises two issues on appeal:

¶2      1. *Did the District Court err by ordering a change in parenting arrangements for John Doe as part of the criminal sentence, despite pending dependency and neglect proceedings?*

¶3      2. *Did the District Court err or exceed statutory mandates by ordering MacDonald to pay fees, costs and surcharges without inquiring into her ability to pay?*

¶4      We affirm, but remand for the District Court to strike a portion of its written judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5      On March 3, 2011, Ashli MacDonald brought her seven-week-old son, John Doe, to the Community Medical Center in Missoula, Montana, due to swelling and bruising in his upper right leg.  She was accompanied by her boyfriend, Pete Lapham.  An examination revealed that John Doe sustained a fracture to his upper right femur.  Based on suspicion of "non-accidental trauma," the doctor conducted a routine skeletal survey of John Doe, which revealed an older, already healing fracture in his right humerus.

¶6      MacDonald and Lapham were directed to the police station and separately interviewed.  MacDonald initially indicated that she was unaware of any potential causes of her son's injuries.  After a break in the interview, however, she stated that she had recently become frustrated with John Doe when he was crying, grabbed him by his right

2

leg, jerked him up, and flipped him over. At that point, his crying changed to a "pain cry" and she knew that she had hurt him. She described another instance when she had become similarly irritated with John Doe's crying and jerked his right arm. At her December 2011 jury trial, MacDonald testified that she had lied in her earlier statement because she wanted to "get out of there quicker" and return to the hospital to be with John Doe. She testified that Lapham, rather than she, was responsible for John Doe's injuries. The jury convicted MacDonald of assault on a minor and aggravated assault, both felonies.

¶7 The District Court ordered a pre-sentence investigation report, which was prepared and filed with the court on January 24, 2012. The court held a sentencing hearing on February 8, 2012. Andrew Cox, John Doe's father, appeared at the hearing and testified that he was concerned about John Doe's safety and care based on MacDonald's assault convictions and his observation that John Doe was often filthy and hungry while in MacDonald's custody. Asked by the court about his preferred residential arrangement, Cox stated that John Doe should live primarily with him and that MacDonald should be permitted supervised visitation. MacDonald's counsel noted that the parenting arrangements were being considered in MacDonald's dependency and neglect companion case and suggested that the court await the outcome of those proceedings, rather than decide the issue at sentencing. The District Court stated that it would "defer to the dependent neglect matter," but, "in the interim, we'll place the child with the father, and we'll order that the mother be given supervised visitation of three days per week, but, not

3

overnight." At the close of the hearing, the court ordered MacDonald to deliver John Doe to Cox by 3:00 that afternoon.

¶8     In its February 15, 2012, written judgment, the District Court sentenced MacDonald to five years at the Montana Women's Prison for the assault on a minor conviction and fifteen years in prison for the aggravated assault conviction, to be served concurrently, with both sentences suspended. The court also ordered MacDonald to pay fines, fees and surcharges, including prosecution and defense costs, summing $1,060 in total. The court recorded no findings regarding MacDonald's financial situation. The judgment did not reflect that the court had inquired into MacDonald's ability to pay the fines, fees and surcharges, nor was the issue of MacDonald's financial ability raised by her counsel. The judgment identified three reasons for the sentence imposed:

1.  The sentence takes into account the pre-sentence report.
2.  The Court has considered the nature of the offense against the child and the injuries suffered by the child.
3.  It is the Court's opinion that the burden has now shifted and it's on the mother to show that she should have unsupervised night visitation with the child. All presumptions are now that the father should have legal custody of the child unless the mother can show that she can provide a safe environment without any temper problems.

MacDonald appeals the judgment.

**STANDARD OF REVIEW**

¶9     We review "a criminal sentence for legality to determine whether the sentence is within the statutory parameters." *State v. Starr*, 2007 MT 238, ¶ 7, 339 Mont. 208, 169 P.3d 697 (citing *State v. Kotwicki*, 2007 MT 17, ¶ 5, 335 Mont. 344, 151 P.3d 892). When suspending "all or a portion of execution of sentence," the district court may

4

impose "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society." Section 46-18-201(4)(p), MCA. We review the imposition of sentencing conditions for an abuse of discretion. *State v. Zimmerman*, 2010 MT 44, ¶ 13, 355 Mont. 286, 228 P.3d 1109 (citing *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, 179 P.3d 1164). We may review a criminal sentence "if it is alleged that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing." *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979).

## DISCUSSION

¶10    1. *Did the District Court err by ordering a change in parenting arrangements for John Doe as part of the criminal sentence, despite pending dependency and neglect proceedings?*

¶11    MacDonald argues that the District Court improperly altered and placed conditions on the parenting arrangements for John Doe during sentencing. She points out that the District Court changed custody—a civil matter with statutorily mandated procedures—in a criminal proceeding "without notice and without the presence of the attorney representing [MacDonald] in the companion case." Although the civil case subsequently restored MacDonald's custody of John Doe, MacDonald suggests the issue is not moot because the conditions imposed on the restoration of her custody could be misunderstood as applying throughout the course of her fifteen-year sentence. In particular, the "burden-shifting" language in the order could be "subject to misinterpretation as a judicial finding of fact and/or law of the case subject to judicial notice in any future civil proceedings." As relief, she requests that this Court "strik[e] from the Judgment the above noted

5

reference to burden-shifting and a presumption that Cox should have legal custody of John Doe."

¶12 Because MacDonald has regained custody of John Doe through the civil proceeding, we agree with the State that "her claim regarding the district court's imposition of an emergency condition concerning the temporary custody of the young victim is moot" because it presents no actual controversy. *See Serena Vista, L.L.C. v. State Dep't of Nat. Resources & Conserv.*, 2008 MT 65, ¶ 14, 342 Mont. 73, 179 P.3d 510 ("[A] case will become moot for the purposes of an appeal where by a change of circumstances prior to the appellate decision the case has lost any practical purpose for the parties, for instance where the grievance that gave rise to the case has been eliminated[.]") (internal quotation marks and citation omitted). During the sentencing hearing, the District Court acknowledged that custody of John Doe was being addressed in the pending abuse and neglect case and stated that it would defer to that decision. The court made clear that its order transferring custody to Cox was to be effective only "during the interim" for the purpose of protecting John Doe. Since the companion civil case has now been decided, the "interim" custody arrangement provided in the sentencing order no longer has any effect.

¶13 We do agree with MacDonald, however, that the statement in the court's written judgment that the father should be presumed to have custody of John Doe should not have been included in the criminal sentence. The court recognized that custody of the child would be determined in the civil case, and it imposed no conditions on MacDonald's suspended sentence relating to her contact with the child, except that she

6

comply with all recommendations in the treatment plan by Child and Family Services. The third statement in the court's reasons for judgment, while not stated as a condition of the sentence, could be construed as a finding or conclusion with implications for any civil custody proceeding, despite the court's professed intent not to make any such determination in the criminal case. Accordingly, the third statement of reasons for the sentence has no place in the judgment and must be stricken.

¶14 2. *Did the District Court err or exceed statutory mandates by ordering MacDonald to pay fees, costs and surcharges without inquiring into her ability to pay?*

¶15 MacDonald acknowledges that she did not object to the District Court's failure to inquire into her ability to pay the fees, costs and surcharges and thus did not preserve the issue for appeal. She points out, however, that this Court may review any sentence that allegedly is "illegal or exceeds statutory mandates, regardless of whether an objection was made," as discussed in *Lenihan*. She suggests that the "*Lenihan* exception may be invoked here" because the District Court's failure to inquire into MacDonald's ability to pay the fees "results in an illegal sentence that may not fall within statutory parameters." *See Lenihan*, 184 Mont. at 343, 602 P.2d at 999-1000. Based on our holding in *Kotwicki*, we disagree with MacDonald's argument.

¶16 We have on numerous occasions recognized that "a sentencing court's failure to abide by a statutory requirement rises to an objectionable sentence, not necessarily an illegal one that would invoke the *Lenihan* exception." *Kotwicki*, ¶ 13; *see e.g. State v. Swoboda*, 276 Mont. 479, 482, 918 P.2d 296, 298 (1996); *State v. Park*, 2008 MT 429, ¶ 19, 347 Mont. 462, 198 P.3d 321; *State v. Jones*, 2008 MT 440, ¶ 16, 347 Mont. 512,

7

199 P.3d 216 (overruled in part on other grounds, *State v. Allen*, 2010 MT 214, ¶ 35, 357 Mont. 495, 241 P.3d 1045).

¶17 In *Kotwicki*, we held that the sentencing court's failure to inquire into the defendant's financial circumstances prior to imposing fees, as required by statute, renders the sentence objectionable, but not illegal. *Kotwicki*, ¶¶ 21-22. After Kotwicki was convicted of five felonies, the sentencing court imposed fees summing $25,000, but failed to conduct an inquiry into the defendant's ability to pay, as required by § 46-18-231(3), MCA. Kotwicki did not object before the district court, but appealed the sentencing decision, arguing that the sentence was illegal and that the *Lenihan* exception applied. We noted that the record indicated Kotwicki had maintained employment as a construction worker for years and possessed a large sum of cash, but it was impossible to tell whether the court actually had considered those factors because it "made no specific findings as to Kotwicki's ability to pay." *Kotwicki*, ¶ 21. We also noted that the fines did not exceed the statutory parameters because the district court was authorized by statute to impose a fine of up to $50,000 for each felony offense. *Kotwicki*, ¶ 16. We held that "Kotwicki's failure to object to the court's oversight of Kotwicki's ability to pay the $25,000 fine constituted a waiver that prevents us from reviewing the issue on appeal." *Kotwicki*, ¶ 22.

¶18 We disagree with MacDonald's suggestion that our holding in *Kotwicki* is limited to circumstances where the record reflects the defendant's ability to pay. Our holding was explicitly based on the assumption "that the court failed to consider Kotwicki's financial condition." *Kotwicki*, ¶ 21. Moreover, here, as in *Kotwicki*, information about

8

the defendant's financial circumstances was available for the District Court's consideration: the pre-sentence investigation report listed MacDonald's employment status, income, financial assets, and debts. MacDonald's failure to object to any oversight by the court regarding her financial condition constituted a waiver of her claim on appeal. *Kotwicki*, ¶ 22.

¶19 MacDonald's reference to *Starr* is misplaced. There, the district court rejected the pre-sentence investigation report's recommendation of a $3,000 fine on its express finding that the defendant would not be able to pay it, but—in contradiction to that finding—then ordered Starr to pay more than $2,000 for fees of assigned counsel. *Starr*, ¶¶ 5, 8. Under those circumstances, we held that the sentence was illegal "[a]bsent an affirmative finding of Starr's ability to pay the attorney's fees." *Starr*, ¶ 10. There is no mention in *Starr* of any failure by the defendant to object to the imposition of defense costs; thus, whether the claim was waived was not an issue on appeal.

¶20 As discussed, MacDonald has not made a "colorable claim" that her sentence was illegal. There is no indication that the imposition of fees totaling $1,060 fell outside of statutory parameters. The fees are authorized by law and the District Court could have imposed a fine up to $50,000 for the aggravated assault conviction. Section 45-5-202(2), MCA. At sentencing, the District Court considered a pre-sentence investigation report that detailed MacDonald's financial circumstances and provided an itemized list of applicable fees. The District Court acted within its discretion in imposing fees and we decline to consider MacDonald's claim absent objection before the sentencing court. *Kotwicki*, ¶ 21.

¶21    For the foregoing reasons, we affirm the judgment of the District Court.  The case

is remanded with instructions to the District Court to strike the language identified as the

third numbered paragraph of its reasons for judgment.


                                    /S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE
/S/ BRIAN MORRIS