DA 12-0619

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 317

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

LEE HUNTER PHILLIPS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 11-198
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Deborah S. Smith, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Mardell Ployhar, Assistant
Attorney General; Helena, Montana

          Fred R. Van Valkenburg, Missoula County Attorney; Andrew W. Paul,
Deputy County Attorney; Missoula, Montana

Submitted on Briefs:  August 21, 2013

Decided:  October 29, 2013

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Lee Hunter Phillips appeals the judgment of the Fourth Judicial District Court, Missoula County, following his felony conviction of criminal production or manufacture of dangerous drugs in violation of § 45-9-110, MCA (2009).

¶2     Phillips raises two issues on appeal:

¶3     *1.     Whether the District Court erred in denying Phillips's motion to suppress evidence.*

¶4     *2.     Whether the District Court's imposition of the cost of court-appointed counsel is illegal.*

¶5     We affirm the conviction and reverse and remand for correction of the sentence.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6     On the morning of October 15, 2010, Missoula County Sheriff's Deputies Schmill and Stineford set out to serve an arrest warrant at 7890 West Riverside Drive (7890) in Missoula County.  The officers later testified that in the process of trying to locate the home they became confused and drove up and down West Riverside Drive.  After unsuccessfully trying to locate the address, Schmill decided to stop for a "knock and talk" at a house he believed to be in the vicinity of 7890 to attempt to determine the home's location.  Later, both officers testified that the house at which they stopped did not have any visible address markings, and they even believed that it might be 7890.

¶7     After walking onto the property through a large gate, Schmill went to the front door while Stineford stayed by the corner of the house.  Schmill knocked on the door.

Through the open front door and closed storm-door window, he could see marijuana plants on hanging racks and dried marijuana in baggies and glass jars.

¶8     Phillips came to the door and, when asked, told Schmill that his address was 7820 West Riverside Drive (7820). Schmill asked Phillips where 7890 was located and Phillips pointed west. Schmill later testified that, because the house numbers should have proceeded opposite the direction in which Phillips pointed, he decided to asked Phillips for identification to verify his identity and address. Schmill testified that Phillips invited him in and produced a driver's license and verification that he was a medical marijuana provider. After calling for back-up and confirming through the Department of Public Health and Human Services the number of patients for whom Phillips provided marijuana, the officers measured the marijuana and allowed Phillips to keep enough for six patients, including himself. They confiscated 868 grams and forty plants of marijuana.

¶9     On May 23, 2011, the State charged Phillips with a violation of § 45-9-110(4)(a), MCA (2009)—criminal production or manufacture of dangerous drugs, marijuana in excess of one pound, a felony. Phillips moved to suppress the results of the search of his residence. He argued that, because the officers had no reason to enter his property, they were not lawfully in a place where they could see the marijuana in plain view. Phillips claimed that the street numbers for both his residence and 7890 clearly were marked on each mailbox and home. The State responded that the officers did not see any markings and did not know who lived at Phillips's residence.

3

¶10     The District Court held a hearing on Phillips's motion to suppress evidence on December 8, 2011. Schmill and Stineford both denied seeing any numbers on Phillips's house or on the mailbox across the street when they drove by or walked up to the door. Stineford stated that based upon the block and side of the street on which the house stood, they believed Phillips's house could have been 7890. Additionally, Schmill testified that he knew nothing about Phillips or his residence prior to speaking with him that day.

¶11     Investigator Mark Beck and Phillips testified for the defense. Beck stated that he went to Riverside Drive in November 2011 to see how the addresses were marked and discovered that the mailboxes of both 7820 and 7890 were marked and that the front of the 7890 trailer was marked. Although Beck opined that he believed 7890 to be easy to locate, he admitted that he had no personal knowledge of whether the numbers existed in October 2010 when the seizure occurred. Phillips testified that the address numbers were on his mailbox the entire time he lived at the residence. Phillips also testified that although he added numbers to one side of the gate and to his front porch after the seizure, the numbers on the other side of the gate were there on October 15, 2010. Phillips provided pictures of his mailbox, gate and home, testifying that they were taken "a couple of days" after the search. The District Court questioned his timeline, indicating that because the photographs showed tulips in the garden, green grass and leaves on trees, the court did not believe they were taken in October. Phillips denied trying to mislead the court but stated it was possible, given the number of photographs he took, that they

4

"could have been taken at different dates." The court stated that they "obviously were" and that this "color[ed] [Phillips's] testimony."

¶12 The court denied the motion to suppress. It found that Phillips's deceit about when the photos were taken and the fact that the numbers looked brand new led the court to believe the officers' account. The court noted that, with the permission of the parties, it consulted with the Missoula County Surveyor, who advised the court that neither 7820 nor 7890 was numbered correctly considering the homes' location. The court found no impropriety in the officers' conduct of walking up to Phillips's front door to knock and ask for directions. Following the order, Phillips moved to reopen the hearing on the motion based on an affidavit of Beck describing additional investigation done to verify whether the addresses were visible at the time of the search. The Court granted the motion and scheduled a second hearing.

¶13 At the second hearing, several witnesses testified that the mailboxes for both 7820 and 7890 were marked with numbers prior to October 2010. The neighborhood mail carrier, Barbara Weimer, testified that the boxes were marked before October 2010. The owner of the 7890 trailer, Nancy Beck, testified that the trailer was marked with an address number that could be seen from the road. The manager of Phillips's residence, Maura Ganz, testified that both the mailbox and the gatepost of 7820 were marked in 2008. Phillips testified again at the second hearing. He acknowledged that the view of the numbers on the gatepost would be blocked if he parked in front of the gate, but stated that he remembered parking in his driveway on that day. Following testimony, the court

concluded that the new evidence did not change its previous decision to "take [the officers'] contention that they didn't see [the numbers] and give them the benefit of the doubt."

¶14 Reserving his right to appeal the court's ruling, Phillips pled guilty on June 26, 2012. The court sentenced him to a two-year deferred sentence. Among other fees recommended by the presentence investigation report (PSI), the court imposed an $800 fee for court-appointed counsel. The court did not inquire into Phillips's ability to pay, and Phillips did not object to the cost. Phillips now appeals both the denial of his motion to suppress and the imposition of the $800 fee.

## STANDARD OF REVIEW

¶15 We review a district court's denial of a criminal defendant's motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether those findings were applied correctly as a matter of law. *State v. Shults*, 2006 MT 100, ¶ 13, 332 Mont. 130, 136 P.3d 507. Findings are clearly erroneous if they are not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record leaves this Court convinced that a mistake has been made. *State v. Dunn*, 2007 MT 296, ¶ 7, 340 Mont. 31, 172 P.3d 110.

¶16 We review criminal sentences for legality. *State v. Mainwaring*, 2007 MT 14, ¶ 7, 335 Mont. 322, 151 P.3d 53. A determination of legality is a question of law that is reviewed de novo. *Mainwaring*, ¶ 7.

6

**DISCUSSION**

¶17    *1.    Whether the District Court erred in denying Phillips's motion to suppress evidence.*

¶18    The parties agree, and it is well-established, that the plain view doctrine allows law enforcement to seize evidence in plain view under certain circumstances. *State v. Loh*, 275 Mont. 460, 473, 914 P.2d 592, 600 (1996) (citing *Horton v. California*, 496 U.S. 128, 136-37, 110 S. Ct. 2301, 2308 (1990)).

> The essential predicate to any valid warrantless seizure of incriminating evidence is that the officer must be lawfully at the place from which he could plainly view the evidence.  In other words, his initial entry onto or intrusion into the place where he views the evidence must not have been in violation of the Fourth Amendment or in violation of Article II, section 11 of Montana's Constitution.

*Loh*, 275 Mont. at 473, 914 P.2d at 600.  Where the parties disagree is whether the officers were lawfully at the place where they could view the evidence—Phillips's front door.

¶19    Phillips argues that the officers came to his front door as a pretext for finding his marijuana grow operation.  He points out that the officers never returned to the area to serve the arrest warrant that had prompted their journey.  After hearing the officers' testimony and considering all of the evidence, the District Court disagreed.  "It is within the province of the trial court to determine the credibility of witnesses and the weight to be given their testimony during a hearing on a motion to suppress and we do not review those determinations."  *State v. Campbell*, 278 Mont. 236, 241, 924 P.2d 1304, 1397 (1996).  "[E]ven greater deference" is given to the trial court's findings when they are

7

"based on determinations regarding the credibility of witnesses." *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S. Ct. 1504, 1512 (1985).

¶20    The officers testified to their stated purpose of trying to locate 7890. The Court also heard testimony from Phillips and others that both addresses were visibly marked at the time. The court viewed photographs of the area and consulted with the Missoula County Surveyor. After weighing the evidence, the court determined that the officers did not act improperly in going onto Phillips's property. Phillips has not convinced us that the District Court's findings were clearly erroneous. The court exercised its jurisdiction to judge Phillips's credibility and find that his potential deceit about when he took the photographs undermined his testimony. The court acted within its fact-finding province to believe the officers' story about being lost on West Riverside Drive. No photograph submitted by the defendant or his investigator definitively showed how the addresses appeared to the officers on that day. Even if every defense witness told the truth about the existence of address numbers on the homes and mailboxes of the two residences in question, that testimony did not prove that the officers were lying about not noticing them—particularly given that the court viewed the officers' confusion in light of the incorrect placement of the addresses on the road. Phillips fails to show how these determinations rise to clear error. A court's decision to believe adverse witnesses over a party's allegations does not meet this standard.

¶21    Phillips argues that because the court acknowledged that the officers could be lying, it was clearly erroneous to accept their testimony at face value. We disagree with

Phillips's assertion that the court accepted any testimony at face value. The court made a credibility determination in light of all of the evidence—including the fact that the address the officers were seeking was not in the correct numerical location. Simply acknowledging that the officers *could* be lying does not mean that the court could not ultimately determine to believe the officers' story. The officers' testimony was not "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *State v. Beach*, 2013 MT 130, ¶ 24, 370 Mont. 163, 302 P.3d 47 (quoting *Anderson*, 470 U.S. at 575, 105 S. Ct. at 1512). Given the evidence before it, the court's finding that the officers acted appropriately was supported by substantial evidence and not clearly erroneous. Being lawfully on Phillips's property, their observations of the marijuana in plain view were an appropriate basis for confiscating the excess plants and for the subsequent charges. The District Court correctly denied the motion to suppress.

¶22     *2. Whether the District Court's imposition of the cost of court-appointed counsel is illegal.*

¶23     Phillips also appeals the portion of his sentence imposing an $800 cost for court-appointed counsel. He argues that the provision is illegal for two reasons: the fee exceeds the amount allowed by the applicable statute in effect at the time of the offense and the court did not inquire into Phillips's ability to pay pursuant to § 46-8-113(3), MCA. The state concedes the first issue, but argues that Phillips waived his second argument by failing to object during his sentencing.

¶24     Although we generally refuse to review an issue raised for the first time on appeal, we have crafted an exception to review allegedly illegal criminal sentences. *State v.*

9

*Lenihan*, 184 Mont. 338, 341-43, 602 P.2d 997, 999-1000 (1979). "It appears to be the better rule to allow an appellate court to review any sentence imposed in a criminal case, if it is alleged that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing." *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000. A merely objectionable sentence, however, does not rise to this level and would not invoke the *Lenihan* exception. *State v. Kotwicki*, 2007 MT 17, ¶ 13, 335 Mont. 344, 151 P.3d 892; *see also State v. MacDonald*, 2013 MT 105, ¶ 18, 370 Mont. 1, 299 P.3d 839. As long as the sentence is within the maximum authorized by law, a sentencing court's failure to abide by a statutory requirement results only in an objectionable sentence, not an illegal one. *Kotwicki*, ¶ 13; *MacDonald*, ¶ 17.

¶25 In *Kotwicki*, we declined to apply the *Lenihan* exception to review a district court's alleged failure to consider the defendant's ability to pay a fine, pursuant to a statutory requirement in § 46-18-231(3), MCA, before imposing a $25,000 fine. *Kotwicki*, ¶ 16. We concluded that the district court's failure to consider the defendant's ability to pay was merely objectionable, not illegal, and, absent objection, could not be reviewed on appeal. We clarified in *MacDonald* that our holding was "explicitly based on the assumption 'that the court failed to consider Kotwicki's financial condition.'" *MacDonald*, ¶ 18.

¶26 As in *Kotwicki* and *MacDonald*, the District Court's alleged neglect of the statutory requirement to inquire into Phillips's ability to pay the costs of court-appointed counsel does not speak to the legality of the sentence and is only objectionable. Phillips

10

did not object to the District Court's procedure or raise his inability to pay at sentencing. The transcript reveals that Phillips did object to a $500 fine listed in the PSI that he argued was not agreed to as part of the plea agreement, and the court did not impose that fine. Yet, even after the court stated that it was including the $800 public defender fee in Phillips's sentence, asked Phillips if he had any questions, and asked if Phillips agreed with the sentence imposed, Phillips did not bring up an inability to pay. Our holding in *Kotwicki* controls; we again hold that a district court's failure to abide by a statutory procedure when imposing a fine does not make a sentence illegal. Given Phillips's failure to object, we will not review whether the District Court correctly followed the procedure prescribed by § 46-8-113(3), MCA.

¶27 The amount of the fee, however, presents a different issue. Phillips alleges that the fee exceeded the amount allowed by statute, rendering that portion of the sentence illegal. The State concedes and we agree that the public defender fee imposed was the wrong amount. "The law in effect at the time an offense is committed controls as to the possible sentence for the offense . . . ." *State v. Tirey*, 2010 MT 283, ¶ 26, 358 Mont. 510, 247 P.3d 701. Section 46-8-113(1) (2009), MCA, provided that a sentencing court shall order a defendant to pay $500 in every felony case for the cost of assigned counsel if the defendant would be able to pay it. The legislature raised the amount to $800 in 2011. Section 46-8-113(1), MCA (2011). Because Phillips pled guilty to a crime occurring in 2010, the 2009 provisions control his sentence. Accordingly, we remand the judgment to the District Court to correct the amount of the court-appointed counsel fee.

11

**CONCLUSION**

¶28    Having concluded that the District Court's findings were not clearly erroneous, we affirm its denial of Phillips's motion to suppress evidence.  Additionally, absent objection below, we decline to review the court's failure to consider Phillips's ability to pay the cost of court-appointed counsel.  We do review the amount of that cost and hold that it exceeded the statutorily allowed amount.  We remand for the District Court to correct the judgment to reflect the cost of court-appointed counsel required by the statute in effect at the time of the offense.

/S/ BETH BAKER

We concur:

/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER

12