COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

December 15, 2016

Gary R. Dodge, Esquire
Curley Dodge & Funk, LLC
250 Beiser Blvd., Suite 202
Dover, DE 19904

Peter K. Schaeffer, Jr., Esquire
Avenue Law
1073 South Governors Avenue
Dover, DE 19904

RE:   Quail Village Homeowners Association, Inc. v. Janice Rossell
      C.A. No. 9131-MA

Dear Counsel:

Pending before me is a motion for summary judgment filed by a homeowners association against a homeowner who erected an accessory structure on her property without first seeking approval from the community's architectural review committee. The association alleges that the accessory structure is being used to house undomesticated or feral cats, and that the homeowner has been feeding the cats, thus encouraging more cats to gather in the community. As a result, the homeowner is now accused of creating a nuisance or using her property

in a way which is dangerous or offensive to the neighborhood.  For the reasons that follow, I recommend that the Court deny the motion for summary judgment.

      I.       Procedural Background

On December 4, 2013, Plaintiff Quail Village Homeowners Association, Inc. ("the HOA") filed a Verified Complaint to Enforce Deed Restrictions under 10 *Del. C.* § 348 against Defendant Janice Rossell, the owner of property located at 742 Raven Circle, Camden-Wyoming, Delaware.[1]  Since 2004, Rossell has lived in the Village of Wild Quail Golf and Country Club ("Quail Village"), a single-family residential community that is governed by a set of deed restrictions.  The HOA argues that Rossell has violated deed restrictions that:  (1) prohibit the erection, placement, and/or alteration of buildings or structures, including additions thereto unless the plans have been approved by the Architectural Committee; (2) require Architectural Committee approval for any outside housing for dogs, cats or other domesticated pets; and (3) prohibit the use of any lot within Quail Village which creates a nuisance or is dangerous or offensive to the neighborhood.  Rossell denied the HOA's allegations in her Answer filed on April 2, 2014.[2]  Mandatory mediation under 10 *Del. C.* § 348 was unsuccessful.  Although Section 348 cases are supposed to be heard expeditiously, pretrial proceedings moved very slowly in

---

[1] Docket Item ("DI") 1.
[2] DI 5.

this case and two motions to compel discovery were filed.[3]  The trial that had been originally scheduled to occur in October 2015[4] was re-scheduled for September 7, 2016,[5] and now has been continued to a later date at the request of counsel.[6]  On March 14, 2016, the HOA filed its motion for summary judgment.[7]

II.     Factual Background

Rossell has admitted in her deposition that she did not seek permission from the Architectural Committee before erecting the accessory structure at issue here.[8] Rossell also testified in her deposition that shortly after the accessory structure was built, her son installed a "cat door" in the front of this structure so her cats could go in and out of it.[9]  Rossell testified that she has had as many as 40 cats residing on her property at one time.[10]  When her cats started multiplying about five years ago, Rossell's son built lofts in the garage to house her cats.[11]  Rossell also has a "cat door" in her garage that is never locked.[12]  In her deposition, Rossell testified that she currently has ten "domesticated" cats in her residence, two of which go in and

---

[3] DI 10 & 36.
[4] DI 21.
[5] DI 43.
[6] DI 50.
[7] DI 45.
[8] Petitioner's Opening Brief in Support of Its Motion for Summary Judgment, Ex. D.  DI 45.
[9] *Id.*, Ex. E.
[10] *Id.*, Ex. F.
[11] Petitioner's Reply Brief in Support of Its Motion for Summary Judgment, Ex.A. DI 51.

out of her residence, four "domesticated" cats living in her garage and about 14 other cats that are living in her garage or outside, for a total of 28 cats.[13]

In her discovery responses, Rossell denied that the accessory structure on her property was being used as kennel for cats, or to house or shelter cats on a continuing basis.[14] Although this structure has a cat door, Rossell testified in her deposition that this cat door is locked most of the time.[15]

### III. Issues

The HOA argues that it is entitled to summary judgment because it is undisputed that Rossell violated Article II, paragraphs two and five of the deed restrictions by failing to obtain approval from the Architectural Committee prior to erecting her accessory structure and by using her accessory structure as outdoor housing for feral cats. The HOA also contends that there are 12 residents in Quail Village who are prepared to testify during a trial about how Rossell's activities have created a nuisance and a dangerous or offensive condition in violation of the Article II, paragraph two of the deed restrictions.

---

[12] *Id.*

[13] Rossell defined "domesticated cats" as cats that a person can pick up and hold, i.e., they're friendly; in contrast, she used the term "feral" to describe a cat that a person cannot pick up. Petitioner's Opening Brief in Support of its Motion for Summary Judgment, Ex. G. DI 45.

[14] *Id.,* Ex. B & C.

[15] *Id.* Ex. E.

In opposing summary judgment, Rossell argues that the HOA has failed to enforce its deed restriction requiring prior approval from the Architectural Committee before any structure can be built or modified, citing several properties in Quail Village where there is no record of any prior approval and even some instances of disapproval that have been ignored and not subsequently enforced. Rossell claims, moreover, that she is entitled to one accessory structure under the deed restrictions, and that the HOA has not objected to the color, character or placement location of her accessory structure. Finally, Rossell argues that, rather than creating a nuisance, she has been practicing effective and humane feral cat reduction by setting non-lethal wire-cage traps and taking the trapped feral cats to be sterilized at her own personal expense. She has offered the opinion of an expert who, if permitted, will testify that the problem of feral cats is due to domestic cat owners failing to spay or neuter their cats, and feeding animals outdoors thereby providing additional food sources to feral cats.

IV.    Analysis

When reviewing a motion for summary judgment under Court of Chancery Rule 56, the Court must examine the record in the light most favorable to the nonmoving party, and if the Court finds no genuine issue of material fact, then

summary judgment is appropriate.[16]  However, if there is a material fact in dispute, summary judgment will be denied.  The burden is on the moving party to demonstrate the absence of any genuine issue of fact and any doubt should be resolved against the moving party.[17]

The HOA contends the record is undisputed that Rossell violated Article II, paragraph two of the Declaration of Restrictions governing Quail Village because Rossell did not seek approval of her accessory structure from the Architectural Committee before she built it, and Article II, paragraph five because Rossell is using the accessory structure to house and shelter feral cats, as opposed to domesticated household pets.  Article II, paragraph two states as follows:

> Architectural Restrictions.  No buildings or structure (i.e., swimming pool, tennis court) or addition shall hereafter be erected, altered or placed on any Lot unless the plans have been approved by the Architectural Committee.  Any Owner seeking the construction or alteration of a building or structure or addition shall submit two (2) sets of plans showing all four (4) elevations together with a description of the exterior materials and their color.  Owner must also submit a site plan showing location of building or structure or addition on said Lot.  The Architectural Committee shall approve or disapprove said plans within thirty (30) days of receipt of same.
> Each Owner who intends to construct any dwelling or structure on his Lot shall prepare a grading plan therefor in conformance with all applicable soil and erosion control laws, ordinances and standards.  Said plan shall be filed with the Architectural Committee.  Owner shall be solely responsible for the implementation of same, and shall implement said plan.
> In passing upon such plans and specifications, the Committee shall take into consideration the suitability of the proposed building or other

---

[16] *Brandywine Hills Community Assoc. v. T. Bruce Wilmoth Construction Co.*, 1995 WL 767336, at * 4 (Del. Ch. Dec. 21, 1995) (citing *Nash v. Connell*, 99 A.2d 242, 243 (Del. Ch. 1953)).

[17] *Scureman v. Judge*, 626 A.2d 5 (Del. Ch.  1992).

structure and of the materials of which it is to be built, to the site upon which it is proposed to erect same, the harmony thereof with the surroundings and the effect of the buildings or other structure as planned on the outlook from the adjacent or neighboring properties.

No clearing, grading or construction upon the lot is to begin until the Architectural Committee issues written approval of all plans which are required to be submitted to the Committee by this Declaration.

The exterior colors shall be within the group of colors known as earth tones. Any other colors must be approved by the Architectural Committee.

The exterior of any dwelling being constructed on any Lot shall be completed with[in] twelve (12) months from the time of the first excavation or grading.

Each accessory building or structure shall be placed to the rear of a dwelling. The Architectural Committee shall determine which are the front, side and rear lines of a Lot, and its decision shall be binding upon the Lot Owner.

No outside TV or CB aerials or antennas, or satellite dishes, and no overhead electrical lines or wires of any kind shall be erected or maintained upon any Lot or structure thereon except with the written consent of the Architectural Committee.

No structural artifact or planting that acts as a barrier exceeding five feet in height, shall be erected, planted, placed or maintained on any Lot, except with the written approval of the Architectural Committee. Wooden fences and chain link fences must be approved by the Architectural Committee.

No use of any Lot which creates a nuisance or which is dangerous or offensive to the neighborhood is permitted. No structure upon a Lot shall be used for manufacturing, business, trade, sales activities or any use other than residential use, except home occupations as may be permitted under the Kent County Zoning Code. The Architectural Committee shall determine whether a use is violative of the above provisions, and the decision of the Committee shall be binding upon the Lot Owners.[18]

It is undisputed that Rossell did not seek permission from the Architectural Committee prior to erecting her accessory structure. Although Rossell argues that (a) the prior approval restriction has been waived because of the existence of other

similar violations in Quail Village and (b) this restriction has not been enforced in an evenhanded fashion, I do not need to address these arguments, which are affirmative defenses that Rossell must prove,[19] because the HOA is not objecting to the appearance or location of Rossell's accessory structure. Instead, the HOA is objecting to Rossell's alleged use of this structure to house feral cats. Therefore, Quail Village's separate deed restriction pertaining to animals must be closely examined.

Article II, paragraph five provides as follows:

> <u>Animals</u>. No fowl shall be raised or kept and no kennel for the breeding or boarding of dogs shall be erected, maintained or used upon any Lot, and no horses, ponies or livestock shall be housed or maintained on any Lot. Dogs, cats or other domesticated household pets may be kept, provided (1) that they are not kept, bred or maintained for any commercial purpose, and (2) any outside housing for any such animals or pets must be approved by the Architectural Committee.

This restriction prohibits fowl, dog kennels, horses, ponies and livestock from being raised, kept, erected, maintained or housed on the lots in Quail Village. It does not limit the number of "[d]ogs, cats or other domesticated household pets" that may be kept on any lot,[20] but if a homeowner desires to provide any outside

---

[18] Verified Complaint to Enforce Deed Restrictions Pursuant to 10 Del. C. Section 348, Ex. A. DI 1.

[19] *See Henderson v. Chantry*, 2003 WL 139765, at *3 (Del. Ch. Jan. 10, 2003).

[20] *See, e.g.*, *McCullough v. The Mansions of North Park Homeowners Association*, 2013 WL 11283784 (Pa. Super., Jan. 25, 2013) (upholding dismissal of homeowner's breach of contract and wrongful use of civil proceedings claims against Association that had enforced its by-laws limiting each household to two

housing for "any such animals or pets," she must seek approval from the Architectural Committee before doing so. Subsection two of paragraph five contains no fixed standards to guide the architectural review of any proposed outside housing "for such animals or pets." Under Delaware law, if there are deed restrictions requiring approval from a body like an architectural review committee before a dwelling or structure can be erected, but the restrictions lack standards outlining the factors the reviewing committee should apply, then the restrictions are unenforceable.[21] The gist of the HOA's complaint is that Rossell has invited cats that are not domesticated cats to use the accessory structure.[22] According to the HOA, Rossell has violated subsection two of this paragraph because the accessory structure is not being used to house domesticated cats.

Rossell denies that she is using the accessory structure to house or shelter any type of cat. Even though it is undisputed that the accessory structure has a cat

---

cats by obtaining permanent injunction requiring homeowner to keep no more than two cats in his unit "upon the death of his last grandfathered cat").

[21] *See Benner v. The Council of the Narrows Assoc. of Owners*, 2014 WL 7269740, at **1, 7 (Del. Ch. Dec. 22, 2014) (Master's Final Report) (citing *Seabreak Homeowners Ass'n, Inc.* 517 A.2d 263, 269 (Del. Ch. 1986) (citing *Alliegro v. Home Owners of Edgewood Hills*, 122 A.2d 910, 912 (Del. Ch. 1956); *Point Farm Homeowner's Ass'n, Inc. v. Evans*, 1993 WL 257407, at *3 (Del. Ch. June 28, 1993)).

[22] Petitioner's Motion for Summary Judgment, at ¶ 8 "It is undisputed, based on the Respondent's deposition and "expert witness" materials that were provided by her counsel, that the Respondent has invited and encouraged undomesticated cats to recreate on her property, in violation of the language in Article II, paragraph 5 which clearly contemplates the keeping of only domestic, household dogs and cats." DI 45.

door, I must view this sparse record in a light most favorable to the nonmoving party, who testified in her deposition that the cat door is mostly locked and she does not house or shelter cats on a continuous basis in that structure. Because there is a genuine issue of material fact, summary judgment is not appropriate here.

Finally, there is another issue that needs to be assessed by delving more thoroughly into the facts.[23] Even if Rossell is using her accessory structure to house cats, how does one distinguish cats that are domesticated from cats that are not domesticated? According to one authority, they are indistinguishable except for "their degree of familiarity with humans."[24] The deed restriction does not define the term "domesticated."[25] State law defines a feral cat as "an offspring of abandoned domestic cats who reverts to a semi-wild state and lives outside in family groups called colonies. Feral cats have a temperament of extreme fear and resistance to contact with humans."[26] Delaware also specifically excludes feral

---

[23] *See Brandywine Hills Community Ass'n,* 1995 WL 767336, at * 4; *Benner*, 2014 WL 7269740, at *7.

[24] Verne Smith, "*The Law and Feral Cats*," 3 Journal of Animal Law and Ethics 7, 12 (2009) ("[F]eral cats and domesticated or owned cats -- commonly referred to as housecats -- are the same species (*Felis catus*). They are indistinguishable but for their degree of familiarity with humans." *See* the use of the phrase "feral domestic cats" in S. Gorman & J. Levy, "*A Public Policy Toward the Management of Feral Cats*," 2 Pierce L. Rev. 157, 158 (2004).

[25] Indeed, it is not clear whether the word "domesticated," as provided in the phrase "other domesticated household pets" refers back to modify the words "dogs" and "cats" when subsection two appears to distinguish between "animals" and "pets."

[26] 16 *Del. C.* § 3013F(g).

cats from its definition of non-native indigenous wildlife species.[27]  Moreover, Delaware provides that a "person in possession or control of a cat, dog or other animal becomes the keeper of a stray domesticated animal, other than livestock, if the person feeds that animal for at least 3 consecutive days."[28]  If Rossell is housing and feeding these cats, as has been alleged, are they considered "stray domesticated" cats within the scope of Delaware's domestic animal laws?[29]

Another deed restriction, pertinent to the Complaint but not this motion, is found at the end of Article II, paragraph two of the Declaration of Restrictions of Quail Village.[30]  The issue to be determined is whether Rossell's use of her property to house and shelter numerous cats and to engage in trap, neuter, and release ("TNR") activities to address a feral cat problem (a problem that Rossell claims has been caused by other people who fail to properly care for their cats) violates the deed restriction by creating a nuisance or is dangerous or offensive to

---

[27] 7 *Del. C.* § 800(2).

[28]  16 *Del. C.* § 3013F(i).

[29] *See*  S. Gorman & J. Levy, "*A Public Policy Toward the Management of Feral Cats*," 2 Pierce L. Rev. 157, 160  (2004).

[30] "No use of any Lot which creates a nuisance or which is dangerous or offensive to the neighborhood is permitted.  No structure upon a Lot shall be used for manufacturing, business, trade, sales activities or any use other than residential use, except home occupations as may be permitted under the Kent County Zoning Code.  The Architectural Committee shall determine whether a use is violative of the above provisions, and the decision of the Committee shall be binding upon the Lot Owners."  Complaint, Ex. A.  DI 1.

the neighborhood. A claim of nuisance is highly fact-intensive,[31] as both the HOA and Rossell appear to acknowledge. The HOA has 12 residents who are ready to testify that Rossell's property is a continuing nuisance and Rossell is prepared to proffer expert testimony regarding trap, neuter, and release programs. It appears that a trial would be the best setting for resolving all these factual and legal issues at the same time.

### V. Exception

The HOA has taken exception to the assertion in my draft report that the HOA is not objecting to the appearance or location of Rossell's accessory structure. The HOA argues that my assertion mischaracterizes its position and compromises the integrity of the community's architectural review process, creating a situation where homeowners would ignore the application process and then try to "ask for forgiveness" afterward.[32] According to the HOA, my assertion is merely speculative because the Architectural Committee was deprived of the

---

[31] *See Kyles v. Great Oaks Interest*, 2007 WL 495897, at *13 (Cal. Ct. App. Feb. 16, 2007) (reversing summary judgment on nuisance cause of action that was based on the presence of large number of cats on plaintiff's property). *See generally, State v. Zimmerman*, 228 P.3d 1109 (Mont. 2010) (after his criminal conviction for maintaining a public nuisance by feeding feral cats, defendant unsuccessfully appealed a sentencing condition requiring him to remove his indoor pets from the county); *Feeley v. Borough of Ridley Park*, 551 A.2d 373 (Pa. Cmwlth 1988) (upholding determination that house was a public nuisance due to noxious and overpowering odors of cat urine).

[32] Petitioner's Opening Brief in Support of its Exceptions to Master Ayvazian's Draft Report Dated July 18, 2016, at p. 6.

opportunity to either approve or reject Rossell's plan to build the accessory structure because no such plan was ever submitted for its review.

Rossell, in turn, supports my assertion as evidencing the fact that the HOA never raised the issue whether Rossell had complied with the deed restrictions regarding the color and location of accessory structures. Rossell views the HOA's exception as an informal attempt to amend the pleadings which, after nearly three years of litigation, would unfairly prejudice her.

In reply, the HOA concedes that my assertion is factually correct, but argues that it: (1) injects the issue of aesthetic compliance into the analysis; (2) is purely speculative because the Architectural Committee never reviewed any plans for the accessory structure since none were submitted; and (3) detracts from the fundamental point that Rossell did not abide by the rules applicable to all homeowners in Quail Village. As a result, the HOA is asking the Court to remove the issue of aesthetic compliance from its analysis on the grounds that the issue is irrelevant and susceptible to improper speculation.

The HOA moved for summary judgment on two grounds. First, the HOA claimed that it was undisputed that Rossell had constructed her accessory structure without prior approval from the Architectural Committee in violation of Article II, paragraph two of the deed restrictions. Second, the HOA claimed that it was undisputed that Rossell was using her accessory structure as outdoor housing for feral cats in violation of Article II, paragraph five of the deed restrictions. Because

Rossell had raised affirmative defenses to the prior approval deed restriction **and** I found a genuine issue of material fact exists whether Rossell's accessory structure is being used to house or shelter feral cats, I recommended that the motion for summary judgment be denied and the matter proceed to trial. Upon review of the HOA's exception, I now agree with the HOA that my statement regarding the appearance and location of Rossell's accessory structure was unnecessary to my analysis and potentially misleading. Therefore, to avoid any confusion about this language, I am modifying my draft report by deleting the following words "is not objecting to the appearance or location of Rossell's accessory structure. Instead, the HOA" from the first paragraph of page eight of my report and inserting the word "also" in their place so that the first paragraph now should read:

> It is undisputed that Rossell did not seek permission from the Architectural Committee prior to erecting her accessory structure. Although Rossell argues that (a) the prior approval restriction has been waived because of the existence of other similar violations in Quail Village and (b) this restriction has not been enforced in an evenhanded fashion, I do not need to address these arguments, which are affirmative defenses that Rossell must prove, because the HOA also is objecting to Rossell's alleged use of this structure to house feral cats. Therefore, Quail Village's separate deed restrictions pertaining to animals must be closely examined.

VI. Conclusion

Although I have modified my report in response to Petitioner's exception, my recommendation that the Court deny Petitioner's Motion for Summary

Judgment remains unchanged.  The parties are referred to Rule 144 for the process

of taking exception to a Master's Final Report.

Respectfully,


/s/ Kim E. Ayvazian
Kim E. Ayvazian
Master in Chancery

KEA/kekz